LESTER M. SHERWOOD AND WILLIAM H. STARK v. THE
SAGINAW, TUSCOLA & HURON RAILROAD COMPANY.

53 317
71 548

*Railways—Assumpsit by sub-contractor for material furnished.*

A railway contractor, after agreeing that the material furnished by him
for construction should become the property of the company as soon
as estimated by its engineer, sublet the job of fencing subject to the
conditions of his contract with the company. The contractor was
paid eighty-five per cent. on monthly estimates. The sub-contractor
furnished timber but did not do his work within the time limited
and the company took possession of it. The contractor had, before
this, surrendered his contract. The sub-contractor sued the company
in assumpsit and recovered. *Held,* by an equally divided Court, that
the judgment should be affirmed.

Error to Tuscola. (Wixson, J.) Jan. 24.—April 16.

CASE. Defendant brings error. Affirmed.

*Tarsney & Weadock* for appellant.

*Black & Quinn* for appellees.

SHERWOOD, J. The plaintiffs bring trover to recover for
a quantity of pine fencing lumber of the value of about
$600, and under the evidence and charge of the court were
permitted to recover.

It appears from the record that Joseph B. Walton, on the
28th of June, 1881, entered into a contract with defendant
to construct a railroad track from East Saginaw to Sebe-
waing, and furnish the lumber for and fence the same for
the sum of $2350 per mile. The contract contains fourteen
clauses and six paragraphs of specifications describing the
work, the materials to be furnished, the manner of its con-
struction, and terms of payment, with much minuteness and
at great length. It will, however, be necessary in disposing
of the case to consider but four of its provisions.

The tenth paragraph reads as follows:

"All materials furnished along the line of the road by said Walton for use in construction, when estimated by the engineer, shall at once become the property of the said first party, and may be held to secure the performance of this contract on the part of said Walton; but to insure care on the part of said Walton, it is agreed that in case of destruction of any such timber or other material by fire, prior to the final completion of this contract, the loss shall be borne by him."

Walton commenced work under his contract in the spring of 1881. On the second day of August, 1881, he sublet to the plaintiff the furnishing of materials for and building the fences for the road. This was done by written contract, with specifications similar to those in Walton's contract with the company. The portions of this contract most needful to be considered are contained in paragraphs first, ninth and eleventh, as follows:

"*First.* That said party of the second part, for the price herein contained, shall at once enter upon the line of the above-named railroad included between the road, at station number three hundred and fifty-nine, the termination of said railroad at Sebewaing, and with suitable tools, men, teams and materials, and all other things necessary to build, construct and complete all the fencing included between said stations, and fully construct the same, and that all the said work embraced in this contract shall be fully completed to the satisfaction and acceptance of the engineer in the employ of the above-named railroad company, in charge of said work, by the first day of December, A. D. 1881, agreeable and subject to all the conditions embraced in said Walton's contract with said railroad company.

"*Ninth.* That when the work embraced in this contract shall be fully done and performed as aforesaid, and shall have been accepted by the engineer, the said party of the first part shall and will pay the said party of the second part for said work as follows: For all fencing built and completed, at the rate of thirty cents per lineal rod; for all necessary boards or fencing for said fence, at the rate of nine and one-quarter dollars per thousand feet, B. M.; and that the quantities shall be fixed and determined by said engineer."

There was written at the bottom of the eleventh paragraph the following: "The quantity of lumber required for said

fence shall be computed at the rate of twenty-six feet, B. M., per rod of fence."

It is under these clauses that the defendant mainly claims to make defense. Neither the amount of lumber, nor the fact that the defendant had the same, are seriously contested. The plaintiffs commenced work under their contract in November, 1881, and placed along the line of the road the lumber claimed for in the plaintiff's declaration before the 16th day of January, 1882, and on that day Walton surrendered his contract to the company, which completed the road.

The lumber remained where it was hauled until after the seventh of March following, at which time the defendant knew Walton was in default, and had not paid the plaintiffs for it. The defendant further ignored the plaintiffs in the matter, who therefore forbade its disturbing or using the timber, and on plaintiff's making demand therefor refused to surrender it, and claimed to be the owner thereof under its contract with Walton. The plaintiffs never received any pay for the timber from Walton, the company, or any one else, and never delivered it to any one. A part of it, when taken by defendant, was not on its right of way, as the plaintiffs claim.

We find no error in the rulings of the court upon the admissibility of the testimony.

The real question in the case, therefore, is: Under the contract with the plaintiffs, did the title to the lumber placed along the line of the railroad pass to the company as soon as it was unloaded there, without other or further action on the part of the plaintiff? The circuit judge held it did not, and I think correctly.

The contract between Walton and the plaintiffs was partly printed and partly written, the printed portion containing several things not applicable to the work mentioned in the contract, and evidently do not refer thereto, and are not relied upon by either party. The clause providing that the fencing was to be done and completed to the satisfaction of the defendant's engineer in charge of the work by the first day of December, 1881, "agreeable and subject to

all the conditions embraced in said Walton's contract with said railroad company," applies to the manner in which the fence was to be built, and by whom to be inspected and accepted when built. It was to be constructed of certain material, using a certain kind of posts, the work to be done in a certain manner. This was necessary in order to secure its acceptance by the defendant's engineer.

The ninth clause, above quoted, clearly shows the acceptance contemplated by the defendant's engineer was to be given after the fence was completed. It was not until then the money for material or construction became due. Under the contract between Walton and the plaintiffs, the lumber was not delivered by plaintiffs until it was placed into the fence and accepted by defendant's engineer. Under the contract between Walton and defendant, the lumber was delivered by Walton as soon as he placed it on the ground along the line of the company's road, where the fence was to be built; but Walton could neither deliver the plaintiff's lumber to the defendant, nor make a contract to deliver which would bind the plaintiffs or deprive them of the title to their lumber, without the plaintiffs' consent or agreement for that purpose, and such consent or agreement the defendant never had.

It does not appear from the record that the plaintiffs ever saw Walton's contract with the railroad company, or knew any of its provisions, except so far as they were referred to in their contract with Walton.

I think the circuit judge took the correct view of the case, and there is no error either in his rulings or the charge, and the judgment must be affirmed.

COOLEY, C. J., concurred.

CHAMPLIN, J. On the 28th day of June, 1881, the defendant entered into a written agreement with Joseph B. Walton for the construction of its railroad between certain points mentioned, and to fence the road according to certain specifications. Estimates were to be made monthly, of the work done and materials furnished, and Walton was to be paid eighty-five per cent. of the estimates according to the con-

tract price.    By the tenth clause, all materials furnished along
the line of the road by Walton, for use in construction, when
estimated by the engineer, at once became the property of
the company, and might be held by the company to secure
Walton's performance of the contract.

On the second day of August, 1881, Walton entered into
a written agreement with the plaintiffs, by which the plaint-
iffs agreed to construct and complete all fencing between
certain points named in the contract, to the satisfaction of
the engineer employed by the defendant, and furnish the
materials therefor, except the wire, nails and fastenings, and
to have the same fully completed " by the first day of De-
cember, 1881, agreeable and subject to all the conditions em-
braced in the said Walton's contract with the railroad com-
pany."    When the work was fully completed, plaintiffs were
to receive payment for it as follows:    For all fencing built
and completed, thirty cents per lineal rod ; for all necessary
boards or fencing for said fence, at the rate of nine and a quar-
ter dollars per thousand feet, board measure ; and the quan-
tities were to be fixed and determined by the engineer, and
estimates of the labor and material furnished were to be made
about the first of each month, and ninety per cent. was to be
paid plaintiffs on or about the 15th of each month.

Where, as in this case, a contract is entered into referring
in express terms to another contract, and subject to all the
conditions embraced therein, both parties must be held to be
fully cognizant of all the stipulations embraced in the con-
tract referred to, and be controlled thereby.    One of the
stipulations of the contract between defendant and Walton
was that all materials furnished along the line of the road,
to be used in the performance of his contract, were to become
the property of the defendants as soon as the same were esti-
mated by its engineer.    The record shows that the lumber in
question was placed on the line of the defendant's road, to
be used in fulfilling the contract between defendant and
Walton, and had been estimated by its engineer, and Walton
fully paid therefor by defendant, and under the terms of
both contracts the title must be held to have passed to the

defendants. It appears, moreover, from the course of dealing between the parties, that the plaintiffs must have been aware that the defendants were estimating this fencing in controversy and paying Walton eighty-five per cent. on his monthly estimates. Indeed, it seems to be a necessary inference from the terms of the two contracts as to payments. Walton's estimates were to be made between the 1st and 10th of each month, and payment made to him on the 12th, while the payments were to be made by Walton to plaintiffs on or about the 15th of each month. This enabled Walton to receive his pay on the estimates made by the engineer and pay to plaintiffs immediately thereafter. If, therefore, plaintiffs were aware of the fact that defendants were estimating this fencing at the points on the road where they caused it to be delivered, as lumber delivered by Walton under his contract, and upon which, by the contract, they were paying him eighty five per cent. of such estimates, as the records tend to show they did, they are estopped from saying that the title to the fencing did not pass from them to Walton or to the defendants. I think the judge erred in his construction of these contracts, and that the judgment should be reversed.

CAMPBELL, J. I concur with my brother Champlin.