71    538
108   341
108   489

71    538
112   607

71    538
119    22
f119   32

71    538
124   213
124   214

71    538
f150  ¹676
150   677

WILLIAM E. AVERY v. THE BOARD OF SUPERVISORS OF
IONIA COUNTY ET AL.

*Board of supervisors—Public buildings—Bond to secure payment*
*of laborers and material-men—Failure of committee to*
*require—Liability for neglect—Subcontractor.*

1. A *subcontractor* is not one of the persons sought to be protected
   by Act No. 94, Laws of 1883, requiring a bond by contractors
   securing the payment of claims for labor and materials fur-
   nished in the erection of public buildings.

   So *held*, where plaintiff contracted in writing with the orig-
   inal contractor to furnish cut stone for a court-house, according
   to the plans and specifications, which were made a part of the
   original contract, which provided that neither the building com-
   mittee nor the county should be held liable for material fur-
   nished or labor performed in and about its performance.

2. A resolution by a board of supervisors to save a building com-
   mittee appointed to superintend the construction of a court-house
   harmless from all suits growing out of the erection of said
   court-house will not create a right of action against the board
   of supervisors for the failure of the committee to require the
   contractor to execute the bond required by Act No. 94, Laws
   of 1883, for the payment by the contractor for labor and mate-
   rials furnished in the erection of said building.

Error to Ionia.    (Smith, J.)    Argued June 22, 1888.
Decided October 12, 1888.

Case.    Plaintiff brings error.    Affirmed.    The facts
are stated in the opinion.

*Corliss, Andrus & Leete* (*S. V. R. Trowbridge*, of counsel), for appellant.

*A. A. Ellis*, for defendants.

[The positions of counsel are stated in the opinion.— REPORTER.]

LONG, J. At a session of the board of supervisors of Ionia county, in 1882, a committee was appointed to present a resolution at the January session of said board, in 1883, submitting to the voters of the county the proposition to build a court-house. On January 11, 1883, this committee made a report to the board of supervisors, and on the same day a resolution was passed by the board appointing a committee of three as a building committee. This committee are the three defendants in this case. These defendants at once caused plans and specifications to be prepared, and advertised for proposals to build the court-house; requiring the party who was the successful bidder to give bonds, according to the terms of the resolution of the board, in the sum of $30,000, for the faithful performance of the contract. The specifications provided, among other things, as follows:

"Sealed bids will be received up till 12 o'clock noon on the 1st day of October, 1883, at the office of the probate judge of Ionia county. They must be upon blanks furnished by the committee, and accompanied by a guaranty, which must be signed by the bidder and acceptable surety or sureties. The successful bidder will be required to furnish an acceptable bond in the sum of $30,000 for the faithful performance of the same."

The bids were received and opened, and Claire Allen was the successful bidder. On November 1, 1883, the committee entered into a contract with Claire Allen for the building of the court-house. Annexed to this contract, and executed at the same time, was the bond as

provided in the notice.    Plans and specifications were
made a part of the contract, and were signed by the con-
tracting parties.

Shortly after the execution of this contract, and some-
time in December, 1883, the plaintiff, William E. Avery,
made an oral contract with Claire Allen, the contractor,
to furnish cut stone for the court-house according to the
plans and specifications, which were a part of the original
contract between Claire Allen and the building committee.
On December 8, $1,000 was paid to Avery on the order
of Claire Allen, on this contract.    On February 11, 1884,
Avery and Allen reduced their contract to writing.
Avery was páid according to the terms of this contract
between him and Allen, in estimates from time to time,
until the last payment of $1,165.55.    This was June 15,
1885.    He received an order from Claire Allen directed
to " C. Waterbury, Superintendent of the Building Com-
mittee of the Ionia County Court-house, Ionia, Mich.,"
for the above amount.    This order was not accepted in
writing by Waterbury, and, after retaining it for some
time, Waterbury returned it to Avery.    This claim of
Avery was presented to the board of supervisors at the
January session, 1887, and the board absolutely refused
to pay it.

At the same session the board of supervisors passed the
following resolution :

" *Resolved,* that the county of Ionia, and the board of
supervisors thereof, shall and do hereby agree to save
harmless the building committee heretofore appointed,
to wit, Chauncey Waterbury, Levi Shotwell, and Edson
P. Gifford, and the members thereof aforesaid, from all
suits and proceedings, claims and demands, growing out
of the erection of the court-house, or in any way relating
thereto."

On March 29, 1887, this action was brought against the
board of supervisors of Ionia county and the committee.

The plaintiff seeks to recover against the committee, because they neglected to require a bond to protect labor and material-men, and joins the county as defendant, because the board of supervisors passed the resolution above set forth.

The declaration in this cause alleges:

1. The adoption of a resolution, for submission to the voters of Ionia county a proposition to raise $45,000, with which to build a county court-house.

2. That in case the resolution was carried, it was provided that Chauncey Waterbury, Edson P. Gifford, and Levi Shotwell should act as building committee, to secure and adopt plans and specifications, and enter into a contract with the lowest responsible bidder or bidders giving proper security for the performance of the contract.

3. By inference it charges that the resolution was adopted by the people.

4. That on November 1, 1883, the committee entered into a contract with Claire Allen for the construction of the court-house; that Allen entered upon the performance of the contract; that by virtue thereof it became the duty of the defendants, and each of them, as a board of officers and agents, contracting for and in behalf of said county of Ionia, who so hold themselves out to the public as a properly constituted board of officers and agents for said county for the purpose of contracting in behalf thereof, to require security, as required by section 1 of Act No. 94 of the Public Acts of 1883.

5. That afterwards, on February 11, 1884, relying upon the bond provided for by said section, and believing a bond had been required of Claire Allen, plaintiff made a contract with Claire Allen to furnish him the stone to be used in constructing said court-house, to the value of $8,425, which said stone were built into the court-house.

6. That the court-house was never finished by Allen, but he failed to do so, and was financially unable to finish the same; and that afterwards, on July 29, 1885, after the material had been furnished, the court-house was taken off the hands of the contractor by the committee, and finished by them.

7. That, at the time said court-house was taken off the hands of Claire Allen by the committee, Allen was indebted

to the plaintiff in the sum of $1,165.55, which sum said Claire Allen had hitherto wholly neglected and refused to pay.

8. That at the time said debt became due, to wit, June 15, 1885, Claire Allen was, and still is, financially irresponsible, so that the debt, or no part thereof, could be collected of him.

9. That at the January session, 1887, the board of supervisors adopted a resolution, and in other ways did ratify and confirm the acts of said building committee, and assumed the responsibility and liability incurred by them, and agreed to save harmless said building committee from all suits, proceedings, claims, and demands growing out of the erection of said court-house, or in any manner relating thereto; and that, by reason of the neglect of said committee and board of supervisors to require said bond, an action had accrued to the plaintiff to demand and recover the sum of $1,165.55, and interest thereon.

The declaration in the case nowhere alleges or attempts to rely upon any misconduct of the defendants, excepting the one fact of the omission to take the statutory bond. It does not allege fraud or deceit, or that the committee intentionally or purposely committed any wrong against the plaintiff. On the trial, so far as the county was concerned, the circuit judge held the resolution offered in evidence, and above quoted, did not bind the county of Ionia so far as to give the plaintiff an action on the case against the county. The court found that the plaintiff, under his contract with Claire Allen, was a subcontractor, and, being such, the bond required by the statute, even if given, would have been no protection to him; that a subcontractor was not one of the class of persons sought to be protected by this statute, but laborers and material-men; and, in view of this fact, directed a verdict in favor of the defendants.

Judgment being entered in favor of defendants, plaintiff brings the case to this Court by writ of error.

The act above referred to provides:

"Section 1. That when public buildings, or other public works, are about to be built, repaired, or ornamented under contract, at the expense of this State, or of any county, city, village, township, or school-district thereof, upon which buildings or works liens might attach for labor or materials, if belonging to private persons, it shall be the duty of the board, officers, or agents contracting on behalf of the State, county, city, village, township, or school-district, to require sufficient security, by bond, for the payment by the contractor, and all subcontractors, for all labor performed or materials furnished in the erection, repairing, or ornamenting of such building.

"Sec. 2. Such bond shall be executed by such contractor to the people of the State of Michigan, in such amount and with such sureties as shall be approved by the board, officer, * * * and conditioned for the payment by such contractor, or any subcontractor, as the same may become due and payable, of all indebtedness which may accrue to any person, firm, or corporation, on account of any labor performed, or materials furnished," etc.

Section 3 provides that such bond may be prosecuted and recovery had by any person, firm, or corporation to whom any money shall be due and payable on account of having performed any labor or furnished any materials in the erection, repairing, or ornamenting of such building or works, in the name of the people of this State, for the use and benefit of such person, firm, or corporation, etc.

The plaintiff's claim is—

1. That the building committee, defendants in this case, in neglecting to require a bond for the protection of material and labor men, neglected the performance of a plain ministerial duty imposed by this statute, and are answerable in damages to plaintiff.

2. That the court erred in holding that plaintiff, upon the facts in the case, was a subcontractor, and therefore could not recover.

3. That the court erred in excluding the evidence showing the conduct of the building committee in paying the contractor large sums of money while holding the order of plaintiff under a verbal promise to pay it from the first moneys due the contractor.

4. That the court erred in holding that the board of supervisors were not liable, notwithstanding that it was shown that they assumed by resolution the liability of the committee to plaintiff.

If the court below is correct in ruling that plaintiff was a subcontractor, and therefore not entitled to recover, we need not discuss any other of the questions raised, as we are satisfied that no recovery could be had against the board of supervisors. There is no pretense of claim against the board of supervisors, except upon the ground of their having passed the resolution to indemnify the building committee, and that the board thereby became liable for any claim plaintiff might have against the committee for their neglect of duty in not taking the bond required by statute. No such liability can attach by reason of the resolution. The board had appointed the committee. The board, as well as the committee, it appears, were entirely ignorant of this statute. When it appeared that suit was about to be commenced against the committee, not for any willful violation of duty or for any fraud or deceit, or that the committee intentionally or purposely committed any wrong against the plaintiff, but that the committee had acted in good faith, but in ignorance of a duty required by statute, the board resolved to save them harmless if they were compelled to pay damages for having been in ignorance of this statute. This action upon the part of the board could impose no obligation upon it to pay, so far as the plaintiff is concerned. If he had no cause of action before this resolution was adopted, which it is not claimed he had, certainly this resolution gave him no greater right to make the board parties defendant to an action he had or claimed to have against the committee.

But has the plaintiff any right of action against the other defendants, the building committee? His contract

made with the principal contractor, Claire Allen, was reduced to writing, and provides, substantially, that plaintiff was to deliver all the stone cut and fitted, all ready for the stone-setter, free on the ground where the building is to be erected for Ionia county court-house; said stone to be in every respect as per plans and specifications furnished by D. W. Gibbs & Co., of Toledo, Ohio; plaintiff to furnish the stone as fast as needed, and not to hinder or delay the workmen on the building in any way; in consideration for which the contractor was to pay plaintiff the sum of $8,425, to be paid as follows, viz., plaintiff to be given an estimate each month of all stone furnished during that month, and to receive 90 per cent. of the estimate, and the remaining 10 per cent. at the completion of the building. The plans and specifications adopted were to be followed in cutting the stone, and those plans and specifications were made a part of the contract between the building committee and Claire Allen, the principal contractor. Plaintiff was to furnish all the cut stone to be put into the building under the original contract, and in accordance with the plans adopted. Reference must be had by the plaintiff in cutting this stone to the plans and specifications. These plans and specifications were, then, made a part of the contract with plaintiff, and he was as much bound by the terms thereof as the principal contractor.

Plaintiff's contract could not be interpreted or understood without having recourse to these plans. He was compelled to look to these specifications to find what his obligations were. His position was not that of a materialman, who furnishes so much material to be manufactured and placed in the building without reference to the plans and specifications. He stands in the position of a subcontractor, advised as to the principal contract, its terms

71 MICH—35

and conditions, and his own contract dependent upon the principal contract.

Plaintiff testified that he never asked to see the principal contract; never asked about the bond; made no inquiry about its condition. It was agreed between the committee and Claire Allen that neither the committee nor the county would be liable for work or material furnished for the court-house.

In *Shaver v. Murdock,* 36 Cal. 208, in discussing the relative rights of parties under a lien law, the court says:

"Upon a compliance on their part. with the terms of the statute above referred to, the right of a subcontractor, laborer, or material-man to the lien which, through the original contractor, inures primarily to the benefit of persons in that relation, must be determined and controlled by the terms of the original contract between the owner and the original contractor."

All such persons are presumed to have notice of the existence of such contract, a knowledge of its terms, and the rights and obligations of the parties thereto; and to have taken subcontracts, contributed labor, and furnished materials in furtherance of the work, in strict subordination to such terms, relative rights, and obligations. Plaintiff did not claim to have entered upon the work under his contract in reliance upon the fact that the bond provided by the statute had been given. The object and purpose of this statute was the protection of labor and material-men; those who furnished material to be used in building, without reference to plans and specifications, and furnished either to the principal contractor or subcontractor, and labor done for either. The condition of the bond required by this statute is—

"For the payment by such contractor, *or any subcontractor,* of all indebtedness which may accrue to any per-

son, firm, or corporation, on account of any labor performed or materials furnished in the erection," etc.

The subcontractor is an under contractor,—one who takes under the original contract, and is to perform in accordance with the original contract, and presumably with knowledge of the terms and conditions of the original contract. This bond is not required by this statute for the protection of that class, but to protect material-men and laborers at the hands of the contractor and subcontractor.

Much stress is laid by counsel for plaintiff upon the ruling of this Court in *Owen v. Hill*, 67 Mich. 51 (34 N. W. Rep. 649). And claim is made that this case falls within the ruling in the opinion of Mr. Justice CHAMPLIN, in that case. In that case no question was raised but that the party complaining was a material-man. The case, however, was ruled upon another point. It appeared that the plaintiff was surety upon the contractor's bond for the faithful performance of his contract. This bond referred to the contract; and it was held by this Court that the plaintiff was so intimately connected with the contractor and his undertakings that he is not in a position to charge the board with negligence for not requiring the bond; and it was said in that case:

"His relation to the school-district is certainly closer than that of a subcontractor would be, and it would seem inconsistent to place him in a better position than a subcontractor. His relations to the parties to the contract were such that he must be held to be chargeable with notice that no bond was required by the board of trustees; and if he furnished material, not upon the presumption that such bond existed for his protection, but knowing the contrary, and upon the credit of the contractor, he is not in a situation to hold the individuals composing the board liable for negligence in not requiring the bond."

. Applying the same principles to the present case, the plaintiff must be presumed to know the conditions of the

contract between his principal and the committee. It was made a part of the contract under which he furnished the cut stone. His contract had special reference to it, and he made no claim that he furnished these stone in reliance upon the statutory bond. The original contract provided that neither the committee nor the county should be held liable for material furnished or labor performed. Plaintiff was bound to take notice of these conditions. *Sherwood v. Railroad Co.*, 53 Mich. 317 (19 N. W. Rep. 14). In any view of the case, the plaintiff was not entitled to recover.

We need not discuss, and we do not express any opinion upon, the question of the right of a material-man or laborer to maintain action against such officers for negligence in requiring this statutory bond. It is not necessary to a decision of this case.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.