PRODUCERS STONE & GRAVEL CO. *v.* CHICAGO BONDING & SURETY CO.

1. BONDS — STATUTORY BONDS — MATERIALMEN — PRINCIPAL AND SURETY—FINDING OF COURT—EVIDENCE—SUFFICIENCY.

In an action by a materialman on a highway contractor's statutory bond for a claimed balance due for stone furnished, where the testimony as to the amount furnished and the amount required was in conflict, the finding of the trial judge, who heard the case without a jury, will not be disturbed, on error.

2. SAME—MATERIALMEN — PRINCIPAL AND SURETY — CONTRACTUAL RELATIONS.

Where the contract to furnish the stone was made by the general manager of another company, but in making same he was acting for plaintiff, and the contractor was so notified and recognized plaintiff as the party furnishing the stone, the surety may not avoid liability for the unpaid balance on the ground that there were no contractual relations between plaintiff and the contractor.

3. SAME—FINDING—EVIDENCE—SUFFICIENCY.

Evidence as to the contract price of the stone, *held*, sufficient to support the finding of the trial judge.

4. SAME—MATERIALMEN—SUBCONTRACTOR.

The test as to whether one who furnishes material to a contractor is a subcontractor rather than a materialman is whether he undertakes to perform any part of the contractor's contract.

5. SAME.

Evidence *held*, sufficient to support the finding of the trial judge that plaintiff was a materialman and not a subcontractor.

Error to Allegan; Cross (Orien S.), J.  Submitted October 6, 1921.  (Docket No. 32.)  Decided December 21, 1921.

Assumpsit by the Producers Stone & Gravel Company against the Chicago Bonding & Surety Company and another for a balance due on a contract for certain stone.  Judgment for plaintiff.  Defendant surety company brings error.  Affirmed.

*Fred M. Raymond* and *Clare E. Hoffman,* for appellant.

*Charles Thew* and *William E. Rafferty,* for appellee.

SHARPE, J.  The defendant construction company, hereafter called the Allen company, entered into a contract with the township of Saugatuck, in Allegan county, for the construction of about 5 miles of macadam road in that township.  The defendant bonding company is the surety on the statutory bond furnished for performance of the contract.  The plaintiff furnished certain stone used in the construction of the highway and brings this suit to recover a claimed balance therefor.  The case was tried by the court without a jury.  Findings of fact and conclusions of law were requested and filed.  The Allen company was not served with process and did not appear in the action.  A judgment for plaintiff for $8,421.89 is

reviewed by the defendant bonding company on writ of error. The assignments all relate to the findings of fact and will be considered in the order discussed by counsel.

1. Quantity of Stone. The plaintiff claimed delivery of 15,166 cubic yards. The defendant admitted receipt of 10,738. The trial court found that 13,775 cubic yards were delivered. The stone was conveyed by a boat called the "Hydro." A blue print showing its dimensions appears in the record. The president of the transit company testified that, when loaded level with the deck, it would hold 757.7 cubic yards, and when the space above the deck, spoken of as the "channels," was filled to its level its capacity was 1,000 cubic yards. The plaintiff's testimony tended to show that 15 boat loads were shipped, that on 3 of them the channels were so filled as to contain 1,100 cubic yards and 1 shipment was short, making the total amount as stated. The defendant offered testimony tending to show that the total amount of stone required to construct the highway as finished was but 10,738 cubic yards; and insists that this should be determinative of the quantity delivered. The contract required a 6-inch bed of crushed stone. The experts who testified for defendant differed somewhat as to the amount required to construct the road, owing to their making a slightly different percentage allowance for compression. They both stated that their figures were dependent upon the subgrade being perfectly level and so prepared that but 6 inches of solid material were at any time needed to make the surface conform to the contract and specifications. In view of the uncertainty in the proofs as to the exact number of cubic yards delivered or required to construct the road, we are unwilling to disturb the finding of the court in this respect. We cannot say that it is against the clear weight of the evidence submitted.

2. Was the Stone Furnished by the Plaintiff? The contract relating thereto was made by James E. Allen, president of the construction company, and D. P. Plummer, general manager of the Universal Crushed Stone Company, but who was at that time acting for the plaintiff company. The stone was delivered between August, 1915, and May, 1916. On November 29, 1915, the Universal company, on its attention being called to the fact that the Allen company claimed contractual relations with it, wrote the Allen company that payment should be made to the plaintiff, as Plummer was acting for it when he made the contract. Thereafter the Allen company treated the contract as one made with plaintiff. It wrote letters to plaintiff relative to shipments and assigned to it $10,000 due from the township. As no claim is or can be made against the Allen company by the Universal company, we see no merit in this defense.

3. The Price. Plaintiff offered proof of the market value of the stone, and it was received over defendant's objection. Plaintiff concedes that a price was agreed upon between Mr. Allen and Mr. Plummer. At the time of the trial, Mr. Plummer was dead. It is plaintiff's claim that Allen's testimony was not admissible to establish the contract price and that it might recover as on an implied contract to pay the market value. Without determining the admissibility of this evidence, we think there is sufficient evidence without it to support the finding of the trial judge. Mr. Allen testified that the price agreed upon was $1, with 5 cents added for dockage at Brittain's dock and 7½ cents dockage if delivered at Weed's dock. Mr. Weed testified that Allen told him the price was $1.15. Mr. Sears, the sales manager of plaintiff, under cross-examination by defendant's counsel, testified that he instructed Plummer to sell at $1.15 and he reported that he had done so. It also appears that the stone was

charged to the Allen company on plaintiff's books at $1.15.

4. Was Plaintiff a Materialman or a Subcontractor? Defendant contends that under the contract the plaintiff agreed to furnish the stone of the kind and quality and in the amount required by the Allen company to fully perform its contract with the township, and that, by so doing, it became a subcontractor within the rule laid down in *Avery* v. *Board of Sup'rs of Ionia Co.*, 71 Mich. 538, and *People* v. *Finn*, 162 Mich. 481, and cases cited therein. If we treat Mr. Allen's testimony as admissible (a question we do not pass upon), we find that after testifying that Mr. Plummer saw the specifications he was asked, "What was said about that if anything when you furnished those specifications?" and answered, "I don't know if anything was said. It is naturally presupposed that he would comply with the specifications, and said he would." The test is whether the plaintiff undertook to perform any part of the contract with the township. We think it apparent that the specifications were only resorted to for the purpose of determining the kind and quality of the stone which the Allen company desired to purchase.

In our opinion, the findings of the trial court are supported by the proofs.

The judgment rendered is affirmed, with costs to plaintiff.

Steere, C. J., and Moore, Wiest, Fellows, Stone, Clark, and Bird, JJ., concurred.