**JAMES TALCOTT, INC., Appellant,**

v.

**William H. COLLIER, Trustee in Bankruptcy of J. A. Riley Lumber Co., Inc., Bankrupt, Appellee.**

**No. 21887.**

United States Court of Appeals
Fifth Circuit.

March 1, 1966.

Samuel Tenenbaum, Birmingham, Ala., Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, Ala., of counsel, for appellant.

George I. Case, Jr., Birmingham, Ala., McGowen & McGowen, Birmingham, Ala., of counsel, for appellee.

Before TUTTLE, Chief Judge, and RIVES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge:

Several months prior to its bankruptcy, J. A. Riley Lumber Co., Inc. (Riley) entered into a written contract with appellant James Talcott, Inc. (Talcott) for the financing and purchasing of accounts receivable under the provisions of the Alabama Assignment of Accounts Receivable Act (ARA), Title 39, Sections 207 et seq., Code of Alabama 1940, as amended.[1] Pursuant to that contract, Riley assigned to Talcott accounts due from Holiday Homes, Inc. and Happiness Homes, Inc. (successor to Holiday Homes), each in excess of $20,000.

Subsequent to the assignment, the stockholders of Happiness Homes entered into a contract with one Jewell Adams which expressly provided that the stockholders would sell all of their shares in the corporation to Adams, in consideration for his (1) payment of $1.00 to each shareholder; (2) assumption of all the debts of the corporation; and (3) promise to deliver a promissory note for $7,500 to Charles A. Dick, President of Riley, in settlement of the debt owed to Riley by Happiness Homes.

Adams executed the note for $7,500 to Riley and delivered it to Dick, who then forwarded it to Talcott. The note was given to Riley in full payment and satisfaction of all sums due by Happiness Homes, totaling more than $40,000. Talcott refused to accept the note, but demanded full payment of *all amounts* which Happiness Homes owed to Riley and returned it to Dick with instructions to return it to Adams. The note was still in possession of Riley when it became a voluntary bankrupt.

The trustee in bankruptcy assumed possession of the note and demanded payment. Concurrently, Talcott insisted that Adams pay the full debt owed by Happiness Homes. As a result, by agreement

---

1. Said sections provide in pertinent part as follows:

"§ 207. Definitions.—For the purposes of this chapter the following words, unless the context or subject matter otherwise requires, shall have the following meanings:

'Account' means an account receivable. It concludes a right to sums due or to become due on open accounts or contracts. It excludes sums due on and rights represented by judgments, notes, bills of exchange, drafts, acceptances or other negotiable or nonnegotiable instruments or agreements for the payment of money, the transfer of which is commonly made by endorsement on and delivery of the instrument or contract; * * *."

* * * * *

" 'Proceeds in any form' of an account means any interest in, or benefit accruing from, the account, including: (a) A judgment arising from the account, (b) proceeds of any partial or complete payment of the account in money or otherwise, including any obligation taken as absolute or conditional payment of the account, (c) security subsequently taken for the account, and (d) goods the sale of which gave rise to the account, returned or not received by the account debtor. (1949, p. 503, § 1, effective Oct. 8, 1949.)"

"§ 208. Effect of assignment.—* * * No existing or future creditor of the assignor, and no subsequent assignee of an account receivable, can or shall, after the making of such an assignment in accordance with the foregoing provisions of this section, and during the effective period of any statement, renewal statement, or affidavit of continuance filed by the assignee as provided in section 209 of this chapter, acquire any right, title, lien or interest in or to such account, *or any proceeds in any form thereof*, equal or superior to or in diminution of the rights of the assignee under such assignment, * * *." (Emphasis added.)

of the parties, the bankruptcy court authorized Adams to pay $5,000 to the trustee in full satisfaction of both claims, but without any prejudice to either Talcott or the trustee to their claims. It was the understanding of the parties that the trustee would request further instructions from the bankruptcy court as to the disposition of the money.

The trustee failed to request such instructions, and Talcott appeared specially in the bankruptcy court, without conceding jurisdiction, and filed a reclamation petition for the funds. The referee held a hearing and determined (1) the court had summary jurisdiction to determine title to the funds; and (2) Talcott had no right or claim to them. The referee reasoned that the note was given to Riley by Adams in consideration for the stock in Happiness Homes and constituted a *personal* obligation to Riley rather than a payment on the debt due Riley by Happiness Homes. And, since there was otherwise no privity between Adams and Talcott, the note (or cash in lieu thereof) was solely the property of Riley and the trustee. These findings were reviewed and affirmed by the District Court, and Talcott perfected this appeal.

Talcott here contends that the bankruptcy court had no jurisdiction over the dispute, even though the trustee had possession of the note, since the bankrupt estate had no *right* to it. Furthermore, assuming there was jurisdiction, the money represents "proceeds" of an assigned account receivable, as defined and protected by the ARA, and is therefore the property of the assignee. The trustee contends: (1) the bankruptcy court had jurisdiction because the estate had both possession of and a substantial claim to the money; (2) the findings of the referee are supported by substantial evidence and should not be overturned unless

"clearly erroneous;" (3) a negotiable instrument requiring endorsement is expressly excluded from the term "accounts receivable" by § 207 of the ARA; and (4) Talcott rejected the note as proceeds of accounts receivable and is thus estopped from now claiming it as such.

■ We first consider the question of summary jurisdiction of the bankruptcy court. It is a fundamental rule that a court has "jurisdiction to determine jurisdiction." Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924); Wright, Federal Courts, § 16 (1963).

■ The general rule is that the bankruptcy court has summary jurisdiction over disputes concerning rights to property in the actual or constructive possession of the trustee, so long as such possession is *rightful*. Thompson v. Magnolia Petroleum Company, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940);[2] In re Worrall, 79 F.2d 88, 90 (2 Cir. 1935); Chandler et al. v. Perry, 74 F.2d 371, 372, 373 (5 Cir. 1934). See generally 2 Collier, Bankruptcy ¶ 23.05 at 467–468 (14th ed. 1964). In this instance, the note (which is represented by the $5,000) was in the actual or constructive possession of Riley at the moment of bankruptcy and such possession immediately passed to the trustee. Since the note was payable to Riley and had not been endorsed to another, possession or *right* thereto was also in the trustee, even though there were adverse claims to it. Therefore, under the above-mentioned rule, the bankruptcy court had summary jurisdiction to decide the controversy.

■■ As to the merits of the case, we are mindful of the well settled doctrine that findings of the bankruptcy court, affirmed by the District Court, will not be disturbed unless clearly erroneous. We conclude that the referee *was* clearly

---

2. In *Thompson* Mr. Justice Black stated: "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy. Here, the trustee succeeded to the physical possession, custody and control of the right of way lands which the railroad had enjoyed at the time of bankruptcy."

erroneous in finding that the note payable to Riley represented consideration paid for the stock in Happiness Homes, *as opposed to* "proceeds" of accounts receivable which had been assigned to Talcott. "Proceeds" of an account receivable is defined in § 207 of ARA as *"any interest in, or benefit accruing from, the account,* including : * * * (b) proceeds of any *partial* or complete payment of the account in money or *otherwise,* including any *obligation* taken as absolute or conditional payment of the account * * *."* (Emphasis added.) It is obvious to us that the note in question was "an interest in, or benefit accruing from, the account * * *" and was an "obligation" taken as payment on the account due Riley by Happiness Homes which had been assigned to Talcott.[3] *But for the account, Riley would never have received the note.* The referee's conclusion that the *reason* Adams gave the note was to satisfy a personal obligation seems to us totally irrelevant, since no one would deny the note was intended by all the parties to be *applied to that particular account in satisfaction of the debt it represented.* While it may have been a personal obligation from Adam's point of view, it was given to pay the debt owed Riley by Happiness Homes. This conclusion is firmly substantiated both by the contract between the stockholders and Adams and by the conduct of the parties. The contract clearly states that the note is in *settlement of the debt owed by Happiness Homes to Riley.*[4] The note was payable to Riley and was delivered to its president for that very purpose. Morever, the president forwarded the note to Talcott evidently in full satisfaction of the entire debt. Talcott simply refused to accept the note and demanded full payment of the account.

■■ The trustee's contention that the provision of § 207 of the ARA defining "accounts receivable" (and expressly excluding "notes * * * the transfer of which is commonly made by endorsement * * *") necessarily excludes the note in question is without merit. It is apparent from reading the further provision of § 207 defining "Proceeds in any form" that such instruments are only excluded when they do not represent payments relating directly to accounts receivable.[5] His further contention that Talcott is *estopped* from collecting the funds as proceeds of accounts receivable since it had previously spurned the note is equally untenable. Talcott

---

3. In Lee v. Kenan, 78 F.2d 425, 426, 100 A.L.R. 869 (1935) this court stated:

"As a legal term, the word 'obligation' originally meant a sealed bond, but it now extends to any certain written promise to pay money or do a specific thing."

See also "Obligation," Words & Phrases, Vol. 29 (1940 ed.) p. 30; Black, Dictionary (4th ed. 1951) p. 1223.

4. The contract reads in part as follows:

"IV. Roddy (Mrs. Charles A. Dick) agreed to sell her stock consisting of five thousand one hundred fifty (5,150) shares for One Dollar ($1.00). As additional consideration Adams agrees to deliver to Charles A. Dick a promissory note for Seven Thousand Five Hundred ($7,500) Dollars, payable without interest in six (6) months. Receipt of these considerations is hereby acknowledged by Roddy and Dick.

"VIII. This contract is entered into by Adams and the other parties with the following understandings:

A. Adams will assume all just debts of Happiness Homes and pay them in cash. The debts of Happiness Homes running to Riley Lumber and its window subsidiary are hereby completely settled for the Seven Thousand Five Hundred ($7,500) Dollar note referred to in Paragraph IV. *The stock of Helen Roddy is being purchased for One Dollar ($1.-00)* (Emphasis supplied)."

5. "Proceeds in any form" * * * means * * * any *obligation* taken as absolute or conditional payment of the account * * *" (Emphasis added). See note 3, supra.

Our case of Blackford v. Commercial Credit Corp. (5 Cir. 1959) 263 F.2d 97, is factually distinguishable from the instant case. In *Blackford* it was noted that the trial court had not passed upon the issues which are presented in the instant case. Moreover, in *Blackford* the record failed to disclose the purpose for which the notes were given, while in the case at bar such purpose is clear and unequivocal.

returned the note apparently because it was unwilling to accept it as *complete* payment of the account. It cannot be said Talcott rejected it as proceeds of the account.

A thorough reading of the briefs and record convinces us that the note made by Adams to Riley constituted proceeds of the account owing to Riley which had been assigned to Talcott. Such proceeds are completely protected by the provisions of the ARA from the claims of the trustee. This case is reversed and remanded to the District Court with instructions to enter judgment for the appellant Talcott.

Reversed and remanded.