**FINGER FURNITURE COMPANY, d/b/a
Finger Contract Supply Company,
Appellant,**

v.

**J. H. BROCK, Trustee, Appellee.**

**No. 25662.**

United States Court of Appeals
Fifth Circuit.
April 25, 1969.

Robert C. Ward, Miami Beach, Fla., for appellant; Sibley, Giblin, Levenson & Ward, Miami Beach, Fla., of counsel.

Irving M. Wolff, Miami, Fla., for appellee.

Before GEWIN, BELL and DYER, Circuit Judges.

GEWIN, Circuit Judge:

By definition, an insolvent economic unit cannot satisfy all its creditors and, therefore, a business disaster commonly inspires vigorous efforts on the part of creditors to maneuver into a favorable position vis-a-vis the remaining assets. From a creditor's standpoint, the only event more dolorous than being relegated to the glutted and clamorous pool of unsecured claimants is being required to return property received from the sagging debtor. The appellant in this case, Finger Furniture Company, has suffered both calamities at the hands of a Special Master in a corporate reorganization under Chapter X of the Bankruptcy Act. Appellant Finger challenged the Master's findings and conclusions in the United States District Court for the Southern District of Florida and, having obtained no relief, renews its contentions in this court. We affirm the judgment of the district court.

I

The background facts of this case are undisputed. The Wingreen Company undertook, *inter alia,* to construct and operate a motel in Gainesville, Florida. The chosen construction site was owned by College Inn, Inc. and, on December 26, 1962, College Inn leased the property to Wingreen for ninety-nine years. Wingreen obtained construction financ-ing from the Miami National Bank, the loan being evidenced by a promissory note and mortgage dated May 4, 1964. Pursuant to the lease agreement, College Inn subordinated its fee simple title to the lien of the construction-loan mortgage which was properly recorded on May 11, 1964. Subsequently, Finger entered into an agreement with Wingreen to supply furniture for the motel; the delivery of the furniture was commenced in July 1965 and completed about September 14, 1965. The purchase price of the furniture was evidenced by a note for $300,912.01 from Wingreen to Finger dated March 9, 1965. The chattel mortgage securing the note was dated July 30, 1965 because—according to Finger's vice president—the company's practice was to take the mortgage when delivery was commenced. However, the chattel mortgage was not recorded until December 20, 1965. Between the date of the execution and the recording of Finger's mortgage, Wingreen executed a note and leasehold mortgage deed to A. I.C. Financial Corporation in the amount of $350,000 and A.I.C. recorded the mortgage on September 7, 1965.

On January 25, 1966, after reaching a point of financial desperation, Wingreen filed its petition for a reorganization under Chapter X. At that time, in addition to the claims of the creditors mentioned above, unsecured claims totaling at least $250,000 were outstanding against Wingreen. Approximately two months prior to the institution of the bankruptcy proceedings, Finger had received a payment of $5,016.03 from Wingreen on the furniture debt. Subsequent to the proceedings, three additional installments totaling $15,048.09 were paid to Finger by the receiver.

On October 18, 1966, the district court appointed a Special Master to take evidence concerning the various claims against Wingreen and to make findings of fact and conclusions of law. After conducting extensive hearings, the Master submitted his report to the court. Among other things, the Master concluded that Finger's chattel mortgage was

fourth in priority, being subordinate to the construction loan mortgage of Miami National Bank, the landlord's lien of College Inn, Inc., and the leasehold mortgage of A.I.C. Financial Corporation, in that order. Moreover, the Master held that Finger's withholding its mortgage from record was fraudulent and, therefore, Finger's claim was relegated to unsecured status and the $15,048.09 in payments made after institution of the bankruptcy proceedings were rendered preferential and voidable as to the trustee. Finally, the Master held that the $5,016.03 payment made to Finger prior to the proceedings was also preferential and voidable.

## II

■■■ In this court, Finger's first attack is upon the Special Master's determination of the priority rank of the secured creditors. However, since we have concluded that Finger was properly relegated to unsecured status, we need not consider this argument. With regard to the invalidation of Finger's chattel mortgage, the law is clear that Finger's failure to record rendered its mortgage fraudulent and void. The facts surrounding the withheld recordation—as established by the testimony, as found by the Master, and as urged in

Finger's brief—are undisputed. Finger states in its brief:

[T]he reason the chattel mortgage was not recorded when deliveries of merchandise had been completed, was that Wingreen wanted Finger to subordinate its first lien on the furniture to the permanent financing to be obtained by Wingreen, and that in subordinating to the permanent financing Finger was to receive a second mortgage on the real estate, as well as the furniture * * *.

In First National Bank of Huntsville v. Ford, this court stated the legal consequences of withholding recordation:

It is well settled that, where a mortgage is withheld from record under an agreement between the mortgagee and the bankrupt, in order that the bankrupt may obtain credit which otherwise would not be available, the mortgage is rendered fraudulent and void, not only as to subsequent creditors, but as to all those interested in the bankrupt's estate.[1]

It is, therefore, clear that the Master's decision must be upheld.

## III

In its brief, Finger concedes that it is not entitled to retain the three installment payments totaling $15,048.09 received after institution of the bankrupt-

---

1. 92 F.2d 810, 811 (5th Cir. 1937); *see* In re Duggan, 183 F. 405 (5th Cir. 1910); In re Nolan Motor Co., 25 F. Supp. 186 (D.D.C.1938); In re Johnson, 23 F.Supp. 337 (W.D.Mich.1938). Among other pertinent findings, the Special Master's report includes the following:

Your Special Master finds that the deliberate and intentional withholding of the recordation of the Chattel Mortgage * * * was in violation of Section 698.01, Florida Statutes Annotated, which provides as follows:

"To be recorded.

No chattel mortgage shall be valid or effectual against creditors or subsequent purchasers for a valuable consideration and without notice unless it be recorded, or unless the property included in it be delivered to the mortgagee and continue to remain truly and bona fide in his possession."

* * * * *

[U]nder Section 70(e)(1) of the Bankruptcy Act (11 U.S.C.A. Section 110(e)(1), 4 Collier on Bankruptcy, Paragraph 70.79, Pages 1622 and 1623, Paragraph 70.81, Pages 1631 through 1634 inclusive, the Trustee is vested with such rights under any State law applicable thereto and where the same is fraudulent as against or voidable for any other reason by any creditor of the debtor having a claim provable under the Act, such a transfer shall be null and void as against the Trustee of the debtor. * * *

14. Your Special Master finds that the claimant's withholding of the recordation of its chattel mortgage is fraudulent and void as to the Trustee herein. * * *

cy proceedings if its chattel mortgage was invalid. Since we hold that the mortgage was rendered void by the failure to record, it is patent that the payments were preferential and voidable. The Trustee, therefore, had summary jurisdiction to order the surrender of the payments.[2]

With regard to the November 1965 payment, Finger argues that both the Master and the district court misconstrued Florida's voidable-transfers statute and misapplied the undisputed facts. The pertinent part of the statute, section 608.55 of the Florida Statutes, F.S.A., provides:

> No conveyance, assignment or transfer of any property of any such corporation [which shall have refused to pay any of its notes or other obligations when due] by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid.[3]

The Special Master found that, at the time of the $5,016.03 payment in November 1965, Wingreen was in extreme financial difficulties and that Finger either knew or should have known about it. Although Finger disputes these facts, we think the court's findings, adopted from the Master's report, are amply supported by the evidence.

Finger makes two additional contentions in support of the November payment. First, it argues that the payment was no different from any other regularly scheduled payment and that, if it was preferential and voidable, then the rent payments to College Inn made about the same time should also have been declared preferential. Regrettably, this argument can avail Finger nothing. Even if we agreed that the Master erroneously failed to find the rent payments preferential—which we most definitely do not—the only question which we must decide here is whether the payment to Finger was preferential. That question has been decided.

Second, Finger argues that the district court misapplied section 608.55 because that provision requires that the debtor be *insolvent*, while Wingreen was found simply to have been having financial difficulty. This contention is clearly meritless. The statute makes payment preferential when the transferor corporation "is insolvent or its insolvency is imminent." Moreover, the Master found that Finger knew that Wingreen was "in extreme financial difficulties." We think the language used by the Master is, for all practical purposes, synonymous with *imminent insolvency*.

After a full review of the contentions in the briefs and the evidence disclosed by the record with respect to the critical issues involved on this appeal, it is our opinion that the Special Master and the district court reached the correct conclusion and that there was sufficient foundation in fact and in law for the findings as entered.[4] Accordingly, we affirm the judgment of the district court.

Affirmed.

2. Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *see* Note, Katchen v. Landy and Summary Jurisdiction in Bankruptcy, 52 Va.L.Rev. 1530 (1966).

3. Fla.Stat.Ann. § 608.55 (1956).

4. In re Atlas Sewing Centers, Inc., 380 F.2d 41, 44 (5th Cir. 1967); James Talcott, Inc. v. Collier, 357 F.2d 23, 25 (5th Cir. 1966).