No. 28,108.

THE INDIANA LIMESTONE COMPANY, *Appellant*, v. J. R. CUTHBERT et al., *Appellees*.

(267 Pac. 983.)

Opinion filed June 9, 1928.

*George Gardner*, of Wichita, for the appellant; *W. R. Martin*, of Bedford, Ind., of counsel.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton* and *W. E. Stanley*, all of Wichita, for appellee Scott Brothers Construction Company; *A. L. Noble, W. A. Ayers, C. A. McCorkle* and *J. D. Fair*, all of Wichita, for appellee Federal Surety Company.

The opinion of the court was delivered ·by

JOHNSTON, C. J.: This action was brought by the Indiana Limestone Company against J. R. Cuthbert, doing business as the Wichita Cut Stone Company, the Scott Brothers Construction Company, and the Federal Surety Company. The defendants prevailed, and plaintiff appeals.

It appears that the Scott Brothers Construction Company entered into a contract with the board of education of the city of Wichita for the erection of a school building designated as the Alcott school building, they to furnish the material and supply the labor necessary and proper to construct and complete the school building in accordance with plans and specifications which had been prepared. The Scott Brothers executed a bond with the Federal Surety Company as surety, the pertinent parts of which are as follows:

"The conditions of this obligation are such that, whereas, the above bounden principal, Scott Brothers Construction Company, is the lowest and best bidder for the making of the following work and/or improvement, viz.: the erection and completion of the Alcott school building in the city of Wichita, Kan., and has entered into a certain written contract with the board of education of Wichita, Kan., for the performance and the completion of said woik and/or improvement in exact accordance with the bid of said principal, and in accordance with certain plans and specifications heretofore made, adopted and placed on file in the office. of the clerk of the board and Glen Thomas, architect. Now, therefore, after the said Scott Brothers Construction Company, principals, shall well and truly pay for the work of all laborers, subcontractors, teamsters, teams and wagons employed on said work and for all material used therein, then this obligation shall be void."

The Scott Brothers Construction Company entered into a contract with J. R. Cuthbert, who does business as the Wichita Cut Stone Company, that he would supply the stone called for in the plans, and specifications, cut ready to be placed in the building. Cuthbert had no part in the construction of the building, but merely procured and delivered the material in proximity to it. He purchased stone from the plaintiff, which prepared and shipped the stone ready to set in the school building. The building has been completed, but Cuthbert failed to pay the plaintiff for all of the stone used. The stone, it appears, was fabricated in accordance with plans and specifications which were furnished it. It therefore

brought the action against Scott Brothers, and also against the Federal Surety Company on the bond heretofore set out. At the trial of the action the plaintiff produced its testimony, and the court upon a demurrer thereto held that the plaintiff did not come within the terms of the bond and was no more than a materialman to a subcontractor. Among other things it appears that Cuthbert was furnishing stone for a number of other buildings and purchased the stone upon an open account with the plaintiff. Monthly statements were sent to Cuthbert on all the stone furnished to him by the plaintiff for all the buildings without regard to where the material was to be used. Cuthbert and his company became a bankrupt and failed to pay for the stone sold to him.

On the part of the plaintiff it is contended that it furnished the stone for the value of which this action is brought; that it fabricated the stone in Indiana according to plans and specifications prepared for the building, that the stone was furnished for the purpose and actually did go into the building, and that it had not received payment for the stone, and therefore insisted that it comes within the terms of the bond. It was admitted by the plaintiff on the trial of the case that it would not have been entitled to a lien under the general mechanic's lien law, but it did claim that the bond was provided for by the legislature to insure the payment of materials furnished, and it makes no difference by whom the materials have been furnished when those materials have been made a part of the school building and payment therefor has not been made. It is said that the statutes providing for security to those who furnish labor and material in construction of public buildings should be given a liberal construction, and a liberal construction would be not to limit its benefits to those only who supply labor or materials direct to the contractor.

What effect should be given to the provision of the bond that the obligees shall pay for all material used in the construction of the building? The bond was given in pursuance of the statute which provides that public officers, before entering into contracts with persons for the making of public improvements or the construction or repair of public buildings, shall take a bond with sufficient security conditioned that the contractors shall pay all indebtedness incurred for labor or material furnished in the construction of the public building or the making of a public improvement. (R. S. 60-1413.)

This statute is a quasi mechanic's lien law (*Wells v. Mehl,* 25 Kan. 205), the bond being given in lieu of a mechanic's lien upon public property, and is for the benefit of the laborers and materialmen. (*Freeman v. City of Chanute,* 63 Kan. 573, 66 Pac. 647; *Griffith v. Stucker,* 91 Kan. 47, 136 Pac. 937.) In interpreting the statute, and in determining the rights of parties under it, we look to the mechanic's lien statutes. (*Road Supply & Metal Co. v. Bechtelheimer,* 119 Kan. 560, 240 Pac. 846.) It is conceded by the plaintiff that it would not have been entitled to a lien under the mechanic's lien law, but it is contended that the statute goes far beyond the mechanic's lien law. It is urged that the bond in terms provides for payment of all materials used in the building. The stone it is said was obtained for the building, was used in the building, and is now a part of it, and that the plaintiff who sold it to Cuthbert has not received payment for the stone. It is further said that it makes no difference by whom or from whom the material was purchased. It is enough that. it was material used in the building, and it is immaterial whether it was purchased from the contractor or subcontractor, nor how far removed the party furnishing it may be from the owner or the contractor. It cannot be overlooked that the provision for the bond is a substitute for a mechanic's lien and is itself a quasi mechanic's lien. It must be read in the light of the purpose of the statute in determining who are contractors, subcontractors and materialmen, and who are within the protection of the statute. In the transaction what was the position of the plaintiff. The Scott Brothers Construction Company was the contractor; it contracted for material from Cuthbert, he had no part in the placing of the stone nor in the construction of the building. He was not a subcontractor but was rather a materialman. The contractor had no dealings with plaintiff and had to account to no one but Cuthbert for the stone which Cuthbert contracted to furnish. As a materialman Cuthbert had a claim for a lien and a right to enforce payment for the material furnished under the contract, and it is shown that payment for the stone has been made to him. Will the fact that he has failed to pay the plaintiff, from whom he purchased the stone, give it a claim in the nature of a lien, and if it would how far back might the liability be extended? It is decided in *Nixon v. Cydon Lodge,* 56 Kan. 298, 43 Pac. 236, that—

"The provisions of the mechanic's lien law do not extend to persons so remote as subcontractors of a subcontractor."

In the course of the opinion the court remarked:

"If it may be extended beyond those who contract with the contractor, it would seem that it might be extended indefinitely to successive subcontractors. This rule would be hazardous to the owner, oppressive to the contractor, and impracticable in its operation. Such an interpretation should not be adopted except where the statute plainly and positively requires it." (p. 305.)

. Much less is there ground for extending liability to one who sold material to a materialman who had nothing to do with the construction of the building. Under the authorities one who takes no part in the construction of a building, but merely furnishes material for use in a building, is not a subcontractor, and if the claimant is employed to furnish material only, whether fabricated or made ready for use or not, cannot be regarded as a subcontractor. (*Hihn-Hammond Lumber Co. v. Elsom,* 171 Cal. 570; *Foster Lumber Co. v. Sigma Chi Chapter House,* 49 Ind. App. 528; *Merriman v. Jones,* 43 Minn. 29; *Matzinger v. Lumber Co.,* 115 Ohio St. 555; *Rudolph Hegener Co. v. Frost,* 60 Ind. App. 108; Phillips on Mechanics' Liens, 3d ed., § 51.) Cuthbert was not a contractor or a subcontractor, but only a materialman, and those from whom he purchased material dealt with him as a materialman. The contractor and his sureties are liable for material furnished to a subcontractor, but are not liable to one from whom the materialman purchased material. In a case where a contractor undertook to build a court house, he executed a bond with a surety company as surety under a statute similar to the one under consideration, providing that he should pay for labor and for material used in the construction of the building. The contractor contracted with the Julian S. Nolan Company for steel to be used in the building, and that company procured the steel from the Concrete Steel Company, and as the steel sold by the latter company was not paid for it brought an action on the bond. The supreme court of Nebraska held that—

"A contractor for the construction of a public building who purchases material from a dealer who has no contract for the construction of any part of the building, and pays such dealer therefor in good faith, without notice of any liability of such dealer, will not be liable on his bond under section 3840, Revised Statutes 1913, to the manufacturer or jobber from whom such dealer may have purchased such material." (*Concrete Steel Co. v. Rowles Co.,* 101 Neb. 400, syl. ¶ 2.)

In the course of the opinion it was said:

"We do not find it necessary under the circumstances in this case to enter upon an exhaustive discussion of the questions involved in this contention.

There must be some limit to such liability. A nail manufacturer sells to a jobber, who in turn sells to a hardware merchant, who subsequently fails, and his stock is sold at public sale by the referee in bankruptcy. A purchaser of a keg of nails at such sale exchanges it with another hardware merchant for other goods, and the latter sells it to the contractor, and the nails are finally used in the construction of the building, but the manufacturer has not been paid for them. The contention of the plaintiff seems to go so far as to hold the contractor's sureties liable to the manufacturer for the selling price of the nails. A subcontractor, that is, one who undertakes to construct some definite part of the building, in some sense represents the contractor, and he represents the owner of the building. He is known by all parties interested in the construction of the building, and in contracting with him he can be held to guarantee, if necessary, that he will pay for the materials and labor he uses in constructing his part of the building. The cases cited seem to make a distinction between a subcontractor and a materialman, and hold the contractor and his sureties liable for materials and labor furnished to a subcontractor, and not liable to the manufacturer or dealer from whom a materialman may have purchased his stock. It appears, as already stated, that the contractor purchased this material of the Nolan Company, and understood that payment was to be made to that company. That company had no contract for the construction of any part of the building; it was not a subcontractor within the strict meaning of that term." (p. 403.)

As stated the court held there was no liability upon the bond to the Concrete Steel Company. Upon plaintiff's theory the liability would be extended not only to the plaintiff for the stone sold to the materialman but the contractor might be liable to those operating the stone quarry where the stone was obtained, and still further, to the owner of the land from which the stone was procured. Such an interpretation of this quasi mechanic's lien law would leave the owner and contractor in a precarious and perilous position indeed, as they could not well know that the claim of some remote person in the material furnished by the materialman, some manufacturer, wholesale dealer or retail dealer, through whose hand the material had passed, had been paid. That view of the act was not, we think, within the purpose of the legislature, but rather that the provision was enacted according to the principles of the mechanic's lien law and should be viewed in the light of its relation to that law. The Kansas cases cited by plaintiff have been examined, but we find nothing in them inconsistent with the views expressed, and nothing in other authorities which convinces us that the judgment of the trial court should be reversed.

It is affirmed.