HOLT AND BUGBEE COMPANY *vs.* CITY OF MELROSE & another.

Suffolk.     January 6, 1942. — April 29, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Public Work. Municipal Corporations*, Security for public work. *Contract*, Building contract, Subcontractor. *Words*, "Subcontractor."

One who, under contract with a general contractor respecting a city building, fabricated lumber into interior trim especially for that building according to certain plans and specifications of the architect, was a subcontractor within the provisions of G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, although he did not undertake to install the trim; and security under the statute was available to a dealer who sold the unfinished lumber to him.

PETITION, filed in the Superior Court on December 4, 1939.

The case was heard by *Swift*, J., and in this court was submitted on briefs.

*H. E. Cryan*, City Solicitor, for the respondent city of Melrose.

*J. G. Bryer*, for the petitioner.

DOLAN, J.   This is a petition in equity brought under G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, to reach certain moneys held by the respondent city as "security" under that statute in satisfaction of a debt due to the petitioner from the respondent MacPhee for lumber furnished to him.   An interlocutory decree was entered that the petition be taken for confessed against MacPhee.   The case was heard upon an agreed statement of facts.   The judge entered a final decree establishing the debt of MacPhee to the petitioner in the total sum (including interest) of $512.25 and ordering the respondent city to pay that sum to the petitioner together with designated costs, and dismissing the petition as against the respondent Bernard Rudnick.   The respondent city appealed.

The material facts are these.   The city entered into a general contract with the respondent Rudnick on December 15, 1938, for the construction of certain additions to its city hall, and for making certain alterations therein in accordance with plans and specifications.   On January 11, 1939, MacPhee submitted a proposal in writing to Rudnick in which he offered to furnish certain interior trim for the city hall according to plans and specifications by "Mowll & Rand" for $1,800.   On January 12, 1939, Rudnick accepted this proposal by letter, which stated that all materials and workmanship were to be "in strict accordance with plans and specifications of Mowll & Rand, architects, and to their satisfaction. All their details are to be followed strictly."

MacPhee was a wood mill operator; the petitioner, a dealer in lumber.   On or about March 15, 1939, MacPhee contracted to purchase from the petitioner at an agreed price the lumber needed to carry out his contract with

Rudnick. The petitioner delivered the lumber to MacPhee, who worked it into the different sizes and dimensions called for by the plans and specifications furnished to Rudnick and to him by the architects in charge of the work. This involved a considerable amount of labor by hand and woodworking machinery. None of the finished stock could be bought in the open market but had to be fabricated according to certain designs for panelling, rails, newel posts, trim and stair stock. From time to time as the materials were milled they were delivered to Rudnick and installed in the city hall by his workmen. MacPhee did not pay the petitioner for the lumber.

The sole issue is whether MacPhee was a subcontractor or a materialman. If he was a subcontractor the petitioner is entitled under said § 29 to be paid out of the fund held by the city, but if he was a materialman the petitioner cannot prevail. *Bennett* v. *Browne,* 290 Mass. 84. The city, citing *Claycraft Co.* v. *John Bowen Co.* 287 Mass. 255, contends that, although the lumber furnished by the petitioner to MacPhee was especially prepared and shaped by him in accordance with the architects' plans and specifications and with his proposal which was accepted by Rudnick, MacPhee was only a materialman because he did not undertake any work of construction or repair on the building itself, and that the case is simply one of an "ordinary sale of lumber by one lumber merchant to another like merchant . . . ." We do not sustain these contentions.

A subcontractor is " 'one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance.' Phillips on Mechanics' Liens, (3d. ed.) § 44." *Friedman* v. *County of Hampden,* 204 Mass. 494, 501, 502. *People* v. *Connell,* 195 Mich. 77, 79. And one who contracts to supply materials manufactured or processed especially for the general contractor and in accordance with special reference to his plans and specifications or those by which he is bound comes within that definition. *Friedman* v. *County of Hampden,* 204 Mass. 494, 503, 506. *People* v. *United States Fidelity & Guaranty Co.* 263 Mich. 638, 644.

It was not necessary that MacPhee should have undertaken to install the finished products in question in the city hall. The labor performed by him in milling the interior trim for the additions and alteration of the building was to all intents and purposes work performed in its construction. *Webster* v. *Real Estate Improvement Co.* 140 Mass. 526, and cases cited. See *United States Fidelity & Guaranty Co.* v. *United States*, 189 Fed. 339, 341.

The case of *Claycraft Co.* v. *John Bowen Co.* 287 Mass. 255, relied upon by the city, is distinguishable on the facts. The debtor in that case did not manufacture any of the materials involved for the construction of the building, nor does it appear from the facts set forth in the opinion or in the original papers in the case that the debtor agreed to furnish the materials in accordance with any plans and specifications furnished to it by the general contractor. On the contrary the debtor procured them from the plaintiff in that case, who manufactured them in accordance with designs, drawings and specifications which it prepared itself.

In so far as *Hightower* v. *Bailey*, 108 Ky. 198, 208, cited by the city, conflicts in its statements with what we have said here, we do not follow it, nor do we follow *Hinckley* v. *Field's Biscuit & Cracker Co.* 91 Cal. 136, upon which the city has also relied.

*Decree affirmed with costs.*