WEBB, d.b.a. MID-STATE PAVING Co., et al. *v.* BLUE
LIGHTNING Co., et al.

No. 41299 January 4, 1960 116 So. 2d 753

*Vardaman S. Dunn,* Jackson, for appellants, T. Heck Webb d.b.a. Mid-State Paving Company and Western Casualty & Surety Company.

*McFarland & McFarland,* Bay Springs; *Crisler, Crisler & Bowling,* Jackson, for appellant, D. O. King.

*Beard, Pack & Ratcliff,* Laurel, for appellees.

APPELLANTS, T. HECK WEBB, ET AL, IN RE-
PLY.

APPELLANT, D. O. KING, IN REPLY.

APPELLANTS, T. HECK WEBB, ET AL, IN RE-
PLY TO APPELLEES, BLUE LIGHTNING SER-
VICE COMPANY, ET AL.

ROBERDS, P. J.

This suit primarily involves the extent of the liability, if any, of a contractor and his surety for materials furnished by a second materialman to a first materialman. The question arises out of the following circumstances:

On May 28, 1956, the Highway Commission of the State of Mississippi entered into a written contract with Heck Webb, doing business under the name of Mid-State Paving Company, under which contract Webb agreed and contracted to pave a segment of public road located in Clarke County, Mississippi, according to the plans and specifications attached to and made a part of the contract. The contract price was $90,591.83.

On the same day the Western Casualty and Surety Company executed on behalf of Webb a performance bond.

On August 9, 1957, the Highway Commission published due notice that the contract had been completed and final settlement had been made with Webb in accordance with Section 9016, Miss. Code 1942.

After entering into the construction contract Webb had an oral agreement with Richton Gravel & Concrete

Company, a corporation, to purchase from Richton washed gravel delivered at the pits.

Blue Lightning Service Company, a corporation, sold to Richton Gravel & Concrete Company gasoline and diesel fuel to be used in mining the gravel.

On February 12, 1958, the Blue Lightning Service Company filed its declaration in this case, averring that under agreement with Richton diesel fuel and gasoline were furnished to enable Richton to excavate and wash the gravel that Richton had agreed to sell to Webb, and that Richton owed it a balance of $2,684.16 for such fuel and gasoline. The declaration also sought a judgment for said sum against Webb, the contractor, and his Surety. The liability of Webb and his Surety rested upon the assumption that Richton was a subcontractor of Webb.

Webb and his Surety denied liability for payment of such fuel and gasoline, contending that Richton was not a subcontractor.

Richton did not contest the suit. Default judgment was entered against him.

On September 18, 1958, W. W. Martin intervened in the suit averring he had furnished to Richton various articles, such as light bulbs, batteries, gasoline and oil to the amount of $76.10, which were used by Richton in connection with mining the gravel. Martin prayed for judgment against Webb and his Surety and Richton for said sum.

On November 4, 1958, D. O. King petitioned the Court for permission to intervene in this suit. The declaration averred that King had furnished to Richton ''6,743 yards stabilizer'' gravel, for which Richton, Webb and his Surety were liable, the balance owing to King being in the amount of $4,642.

Considerable testimony was taken at the trial of the case, mainly upon the question whether Richton used the diesel fuel and gasoline bought by Richton from Blue

Lightning Service Company in mining the gravel which was used on the public road which Webb had contracted to pave, and whether the gravel bought by Richton from King was so used. Under our conception of the controlling principle in the case it is not necessary for us to decide that question.

At the end of the trial the learned circuit judge granted a peremptory instruction to the jury to return a verdict of $2,653.65 for the Blue Lightning Service Company against Webb and his Surety and Richton. He also instructed the jury to return a verdict against Webb and his Surety in favor of Martin for $25.13, this being the value of the articles he found Martin had furnished and which Richton had used in the production of gravel. By this finding he also denied to Martin recovery for the other articles composing the amount for which he sued. He further instructed the jury to find that Webb and his Surety were not liable to the Blue Lightning Service Company for one tire, $26.51, and money advanced to pay for a sign in the sum of $4. He instructed the jury to find that Webb and his Surety were not liable to the Blue Lightning Service Company for attorneys fees.

From judgments entered in accordance with the foregoing instruction Webb and his Surety prosecuted a direct appeal to this Court, and King, Martin and the Blue Lighting Service Company prosecuted cross-appeals.

 We are of the opinion that Webb and his Surety are not liable to claimants under the facts of this case. It will be noted that the claim of the Blue Lightning Service Company rests upon its furnishing diesel fuel and gasoline for the production by Richton of gravel. Webb had simply agreed to purchase gravel from Richton. Richton was under no obligation to do anything whatever towards the construction of the road. All it did was to sell to Webb gravel delivered at the pits. He had

no responsibility to see that the contract with the State Highway Commission was fulfilled in any respect. There is nothing peculiarly applicable to paving the road in the type of diesel fuel and gasoline furnished by Blue Lightning. The same type of fuel could have been purchased by Richton from many other dealers in such fuels. Nor was the gravel furnished by King peculiarly applicable to the road. It was washed gravel suitable for use in other construction projects.

17 C. J. S., p. 333, Par. 11, contains this statement: " 'Subcontractor' has a well defined meaning in building contracts, and as used in its technical sense it means one who takes from the principal contractor a specific part of the work, and does not include laborers or materialmen."

Marsh v. Rothey, 183 S. E. 914 (W. Va.), states Rothey had a contract to construct a dam for the city. He agreed to buy crushed stone from Bland at a unit price per cubic yard. Plaintiff worked for and furnished materials to Bland. The suit was on the construction bond. The Court held that Bland was a materialman and not a subcontractor and had no claim on the bond. The West Virginia Court defined a subcontractor and a materialman in this language: "A subcontractor, ordinarily, is one to whom the principal contractor sublets a portion or all of the contract itself. (Cases cited.) A Materialman, ordinarily, is one from whom the principal contractor or a subcontractor secures material of a general type, for use on the structure."

Again it was said in Indiana Limestone Company v. Cuthbert, et al., 267 P. 983: "Under the authorities, one who takes no part of the construction of a building, but merely furnishes material for use in a building, is not a subcontractor, and if the claimant is employed to furnish material only, whether fabricated or made ready for use or not, cannot be regarded as a subcontractor. (Citing cases from California, Indiana, Minnesota and

Ohio.) Cuthbert was not a contractor or a subcontractor, but only a materialman, and those from whom he purchased material dealt with him as a materialman. The contractor and his sureties are liable for material furnished to a subcontractor, but are not liable to one from whom the materialman purchased material.''

In Foster Lumber Company, et al. v. Sigma Chi Chapter House of DePauw University, 97 N. E. 800, the Court used this language: ''Appellant Stringer's contract required him to do nothing in the construction of the building; he was only required to furnish material. This did not make him a contractor or subcontractor. * * * We do not see any reason why he ceased to be a materialman because he furnished all the stone, instead of a part; nor do we think material ceases to be material when it is finished and ready for use.''

In Baker v. Yakima Valley Canal Company, 137 P. 342, the Court held that one who screened and furnished sand and gravel to a contractor under a contract to reconstruct a canal was a materialman and not a subcontractor, and that the contractor had no liability to laborers employed by such materialmen. The Court stated its reasons for the conclusion in these words: ''It would be wholly unreasonable to expect him (the contractor) to go afield and investigate as to all labor performed by employees of materialmen furnishing the various materials used in the work; none of such labor being connected with the actual work of construction, nor performed on the premises. The statute must be liberally construed, but a liberal construction does not mean an unfair construction, even in the interest of a favored class.''

In Concrete Steel Company v. Bowles Company, 163 N. W. 322, the Court explained why a limit must be placed upon the liability. It used this language: ''There must be some limit to such liability. A nail manufacturer sells to a jobber, who in turn sells to a hardware mer-

chant, who subsequently fails, and his stock is sold at public sale by the referee in bankruptcy. A purchaser of a keg of nails at such sale exchanges it with another hardware merchant for other goods, and the latter sells it to the contractor, and the nails are finally used in the construction of the building, but the manufacturer has not been paid for them. The contention of the plaintiff seems to go so far as to hold the contractor's sureties liable to the manufacturer for the selling price of the nails. A subcontractor—that is, one who undertakes to construct some definite part of the building—in some sense represents the contractor, and he represents the owner of the building. He is known by all parties interested in the construction of the building, and in contracting with him he can be held to guarantee, if necessary, that he will pay for the materials and labor he uses in constructing his part of the building. The cases cited seem to make a distinction between a subcontractor and a materialman, and hold the contractor and his sureties liable for materials and labor furnished to a subcontractor, and not liable to the manufacturer or dealer from whom a materialman may have purchased his stock. It appears, as already stated, that the contractor purchased this material of the Nolan Company, and understood that payment was to be made to that company. That company had no contract for the construction of any part of the building; it was not a subcontractor within the strict meaning of that term.''

See also the following authorities which bear directly upon the question under consideration: Northwest Roads Company v. Clyde Equipment Company, 79 F. 2d 771 (C. A. 9, 1935); Tipton Realty & Abstract Company v. Kokomo Stone Company, 110 N. E. 688 (Indiana); Forsberg v. Koss Construction Company, 252 N. W. 258 (Iowa); Neary v. Puget Sound Engineering Company, 194 P. 830 (Washington); J. Watts Kearny & Sons v. Perry, 141 So. 13 (Louisiana); Huddleston v. Nisler, 72 S. W. 2d 959 (Texas.)

The authorities relied upon by claimants appear to involve the liability for materials furnished contractors or subcontractors and for work done for such contractors. In the case of Western Casualty & Surety Company v. Stevens, 218 Miss. 627, 67 So. 2d 510, Horne, the contractor, had defaulted in his contract. The surety had taken charge. The surety relet the contract for completion to Davis Plumbing Company. The materials for which suit was brought were delivered to, and used by, Davis Plumbing Company in fulfillment of the contract. Davis was a subcontractor.

In H. F. Vann Nieuwenhuyze & Sons Construction Co., et al. v. Ray Irby, d.b.a. Irby Plumbing Company, 232 Miss. 474, 99 So. 2d 651, the contract involved a housing project. The Court explained the relation of the claimant in these words: ''A part of the work was sublet to the Thompson Plumbing Company, and which said subcontractor employed Ray Irby, doing business as Irby Plumbing Company, to do certain ditching with his own machine for the laying of water, gas and sewer pipes in the City of Holly Springs. The suit involves a balance alleged to be due the said Ray Irby for work in digging ditches with his own machinery at the instance of the Thompson Plumbing Company, at 25c for each lineal foot of ditches dug, the original price for such digging amounting to $1,165.50, and on which the sum of $300 has been paid.''

In Oliver Construction Co., et al. v. Dancy, et al., 137 Miss. 474, 102 So. 568, Oliver Construction Company contracted to build a road in Benton County and gave a performance bond. Oliver sublet the contract to Lansdale and Ackerman ''who undertook to construct the road according to the terms of the original contract.'' Dancy and others ''performed work and furnished material in the construction of the road under the said subcontractors, Lansdale and Ackerman,'' who issued due bills or notes to claimants for services render-

ed and materials furnished in the construction of the road. These due bills were in the nature of stated accounts. The claimants were not paid by the subcontractor and they instituted this suit against Oliver Construction Company and its surety. The question was whether or not the claimants had "waived or released their rights to go against the Oliver Construction Company and the Surety Company for the balance due them, on the ground that appellees accepted the duebills or notes of the subcontractors, Lansdale & Ackerman, which represented statements of the amounts due appellee for labor and material furnished in the construction of the road," and thereby released Oliver Construction Company and its Surety. The Court held there was no release. It is readily seen that this case involved the liability of the contractor and subcontractor.

Webb and his Surety should have had a peremptory instruction in the lower court.

The trial court denied the right of King to intervene because King had not filed his petition within one year as required by Section 9016, Miss. Code 1942, Recompiled. It is unnecessary to pass upon that question because what we have said on the fundamental question of the rights of materialmen applies to King as well as to the Blue Lightning Service Company. This is also true as to Martin. He was not entitled to recover against Webb and his Surety. Richton did not appeal and it followed that a judgment for Webb and his Surety must be entered here.

Reversed and judgment here for appellants Webb and the Western Casualty Insurance Company.

*Lee, Kyle, Arrington* and *Gillespie, JJ.*, concur.