187 So.2d 19 (1966)
O'NEAL STEEL COMPANY, Inc.
v.
LEON C. MILES, INC., et al.
No. 44010.
Supreme Court of Mississippi.
May 30, 1966.
*20 Ebb J. Ford, Jr., Gulfport, Cumbest, Cumbest, O'Barr & Shaddock, Pascagoula, for appellant.
Richard D. Foxworth, Ernest R. Duff, Columbia, for appellees.
BRADY, Justice.
This is an appeal from a judgment in favor of appellees, Leon C. Miles, Inc., Travelers Indemnity Company, Pascagoula Municipal Separate School District and the City of Pascagoula, Mississippi. The judgment was based on a peremptory instruction granted these appellees by the Circuit Court of Jackson County upon the appellant resting its case.
This case is complicated, with numerous pleadings and an abundance of prolix facts. Its disposition, however, does not require an enumeration of all the facts or a consideration of the sundry issues which are ably presented in the excellent briefs of counsel representing the litigants. The minimal, essential facts are these.
On April 30, 1962, a contract was duly consummated between Leon C. Miles, Inc., General Contractors, Columbia, Mississippi, and Pascagoula Municipal Separate School District, Pascagoula, Mississippi, for the construction of a white elementary school building in Pascagoula, at a cost to the owner, the Separate School District, of $311,885. A performance bond was properly executed by Leon C. Miles, Inc., as principal, and Travelers Indemnity Company of Hartford, Connecticut, as surety, in the penal sum of $311,885, with the usual standard provisions and requirements.
Simultaneously with the execution of the performance bond, a Labor and Material Payment Bond was also executed by Leon C. Miles, Inc., hereinafter designated as Miles, Inc., as principal, and Travelers Indemnity Company, as surety, in the sum of $155,942.50, with the customary obligation that the contracting principal promptly make payment to all claimants as therein defined, for all labor, materials, equipment or supplies used or reasonably required for use in the performance of the contract, as provided by Mississippi Code Annotated sections 9014-9017 (1956), and other pertinent sections. A portion of the Labor and Material Payment Bond reads as follows:
A Claimant is defined as one having a direct contract with the Principal or which a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract * * *.
The Labor and Material Payment Bond provides for other relief and embodies certain conditions precedent which we are not presently required to consider, including the prohibition that:
3. No suit or action shall be commenced hereunder by any Claimant,
(a) * * *
(b) After the expiration of one (1) year following the date on which Principal ceased work on said Contract.
*21 The record discloses that the appellees admitted that Miles, Inc., purchased certain items of fabricated steel and metal from Ramsay Steel and Supply Corporation, hereinafter called Ramsay Steel, for use in the building. Appellees further admitted that Miles, Inc., issued what they designate as a purchase or work order to Ramsay Steel for the erection of some of the steel.
The record discloses that Mr. Fred McCrory, the general credit manager for O'Neal Steel, Inc., the latter hereinafter designated as O'Neal Steel, identified account No. 824 as the job of the Pascagoula School construction; that there was due and owing a balance of $17,600. He identified every piece of material as cut on specific order from Ramsay Steel. He testified that purchase order No. 824 was assigned on the original invoice and kept separate on the books of O'Neal Steel. He identified all related invoices and documents, totaling twenty-five in number. Delivery receipts were also identified for specific materials, including beams, welded tubing, and structural steel cut to specifications designated by Ramsay Steel.
Mr. Raymond Quinn, Manager of O'Neal Steel, stated that O'Neal Steel specially cut the various pieces of steel in lengths and sizes for Ramsay Steel's specific use on the job, and that Ramsay Steel's fabricator punched the holes therein; that he knew what construction it was for and identified the construction as Job A-824, the white elementary school, Pascagoula, Mississippi. This witness further testified that Ramsay Steel had a fabricating shop with portable equipment, consisting of welding machines, iron workers, a punch, a shear, bar benders, facilities to paint the steel, and also trucks with an "A" frame and boom pole for lifting and erecting the steel. Mr. Quinn stated that he examined the plans in the office of Ramsay Steel and filled the order according to those plans; that Ramsay Steel was the fabricator and that he examined the appellee's Exhibit 5 (appellant's Exhibit B), which constituted the erection contract written on the letterhead of Miles, Inc.
Fred Ramsay, President of Ramsay Steel, who was called as an adverse witness, testified that his corporation was bankrupt; that it had erected all the steel and that he had employed and paid a firm named McGuffey & Sons, of Vicksburg, Mississippi, hereinafter referred to as McGuffey, to do some of the erection of the steel purchased from O'Neal Steel; that he did deliver the steel to the job in accordance with his contract with Miles, Inc. He stated: "I hired that man to come down here to erect that steel."
The record discloses that the erection price to be paid was $3,850 when the job was completed according to specifications. Ramsay Steel was furnished the specifications, either by Architect Claude H. Lindsley, or by Miles, Inc. The record further indicates that there was no basic difference in the contract which Ramsay Steel had with McGuffey and the one it had with Miles, Inc., to erect the steel for the price of $3,850.
Leon C. Miles, President of Miles, Inc., as an adverse witness, also admitted that Ramsay Steel was there on the job to construct and erect the steel part of the building; that Ramsay Steel was under his control, but that he "couldn't control him;" and that he had set a figure for the amount of the steel and a figure for the amount of the construction and erection of the steel. He stated he knew Ramsay was erecting the steel, lifting it up and putting bolts into it and that it became a part of the building. He stated he told Ramsay what building it was going in by giving him the shop drawing and that Ramsay's foreman was there and he was the general contractor. He further testified that the architect outlined, to begin with, what steel had to be used, and that Ramsay had the plans and specifications.
The record indicates that the school building was completed on or about May 31, 1962. The appellant instituted suit on May 18, 1963, for $17,621.48, the amount *22 claimed to be due and owing by the appellees.
Appellees in their brief tersely and unequivocally "submit that the issue in this case is single and simple. Is the Ramsay Steel & Supply Corporation a materialman or a subcontractor?" Appellant's brief also clearly concedes this to be the issue. We are in complete accord with the astute and analytical conclusion of the appellees that the sole issue here for determination is whether or not Ramsay Steel was a subcontractor. This question turns upon whether or not Exhibits A and B are merely purchase orders which any materialman could fill, or whether or not, irrespective of their designation as purchase orders, they are in essence contracts utilizing the materials and services of a subcontractor. Exhibit A is as follows:
 LEON C. MILES, INC. NO. 228
 General Contractors
 P.O. Box 224
 Columbia, Miss.
 TO: Ramsay Steel & Supply Corporation Date May 2, 1962
 P.O. Box 6624
 Jackson, Mississippi
 Ship to: Leon C. Miles, Inc.
 General Contractors
 Terms Net 15th Prox. White Elementary School
 Address
 Delivery As Per Job Requirements
 Pascagoula, Mississippi 
 City
 Ship Via: Your trucks 
 F.O.B. Job Site 
 --------------------------------------------------------------------------
 Item Number Quantity Unit Article Unit Price Total
 --------------------------------------------------------------------------
 Furnish the following material in
 accordance with Plans, Specifications,
 address No. 1 & 2 and acceptable to
 the Architect and Owners.
 Structural Steel & Bar Joints complete
 Miscellaneous Ironwork Consisting
 of:
 (1) Plate covers for walk drains.
 (2) Folding door track.
 (3) Angle Framing for Hoods
 (4) Pipe Handrailing.
 (5) Foot scraper grates.
 All the above for the lum sum
 of . . $26,000.00
 --------------------------------------------------------------------------
 PLEASE SIGN AND RETURN ACKNOWLEDGMENT COPY ATTACHED
 By: Leon C. Miles, President
*23 Exhibit B is as follows:
 LEON C. MILES, INC.
 GENERAL CONTRACTORS  P.O. Box 224
 Columbia, Miss.
 TO: NO. 242
 Ramsay Steel Company
 P.O. Box 6624 May 29, 1962
 Jackson, Mississippi
 Ship to:
 Leon C. Miles, Inc.
 General Contractors
 White Elementary School
 Terms Net 15th Prox.
 Pascagoula, Mississippi
 DELIVERY As Per Job Requirements
 F.O.B. JOB SITE 
 SHIP VIA: YOUR TRUCKS
 --------------------------------------------------------------------------
 ITEM NO. QUANTITY UNIT DESCRIPTION UNIT PRICE TOTAL
 --------------------------------------------------------------------------
 Erect all Structural Steel in accordance
 with Plans and Specifications and acceptable
 to the Architect and Owner for the
 lump sum of ...........................
 $3,850.00
 --------------------------------------------------------------------------
 Acknowledgment:
 We hereby acknowledge acceptance of this
 order and expect to make shipment as Regd
 Ramsay Steel & Supply Corp.
 By: Fred Ramsay, Jr. TITLE Pres.
 Date May 31, 1962
 LEON C. MILES, Inc., General Contractors
 By /s/ Leon C. Miles 
 Leon C. Miles, President
A careful review of the testimony in this record clearly and conclusively shows that Exhibit A was a contract calling for the fabrication and delivery of certain structural steel parts. The record discloses that many of these parts had to be cut, welded and assembled in strict compliance with the plans and specifications submitted by Architect Claude H. Lindsley; that some of the fabrication took place approximately two hundred miles from the plant of Ramsay Steel located in Jackson, Mississippi; that portable steel equipment belonging to Ramsay Steel was utilized in the fabrication of these materials subsequent to their transportation to Pascagoula. The fabricating and assembling of the steel materials to be used in the building were made in strict *24 compliance with the plans and specifications, and all were subject to the inspection and approval of the architect.
Exhibit B clearly shows that it was a contract for the erection of all structural steel in accordance with the plans and specifications acceptable to the architect and owner. This was a contract of performance for the specific sum of $3,850, and by no stretch of the imagination can this be considered a purchase order for materials. The proof in this case clearly shows that the materials furnished by O'Neal Steel to Ramsay Steel were delivered to Ramsay Steel to be and they were constructed into the school building, with the knowledge and approval of Miles, Inc.
It is a settled rule in this state that under Mississippi Code Annotated section 9014 (1956), and the other pertinent sections, a materialman and laborer of a subcontractor can recover against the prime contractor and the surety on his bond based upon the execution of a public contract such as is involved in the case at bar. Mississippi Road Supply Co. v. Western Casualty & Surety Co., 246 Miss. 510, 150 So.2d 847 (1963); Oliver Const. Co. v. Dancy, 137 Miss. 474, 102 So. 568 (1925).
We pointed out in Webb v. Blue Lightning Service Co., 237 Miss. 862, 870, 116 So.2d 753, 755 (1960), as follows:
17 C.J.S. Contracts § 11, p. 333, contains this statement: "`Subcontractor' has a well defined meaning in building contracts, and as used in its technical sense it means one who takes from the principal contractor a specific part of the work, and does not include laborers or materialmen."
In that case we cited Marsh v. Rothey, 117 W. Va. 94, 183 S.E. 914 (1936), and stated:
The West Virginia Court defined a subcontractor and a materialman in this language: "A subcontractor, ordinarily, is one to whom the principal contractor sublets a portion or all of the contract itself. (Cases cited.) A Materialman, ordinarily, is one from whom the principal contractor or a subcontractor secures material of a general type, for use on the structure." (237 Miss. at 870, 116 So.2d at 755.)
In Indiana Limestone Co. v. Cuthbert, 126 Kan. 262, 266, 267 P. 983, 984 (1928), it is stated:
Under the authorities, one who takes no part in the construction of a building, but merely furnishes material for use in a building, is not a subcontractor, and if the claimant is employed to furnish material only, whether fabricated or made ready for use or not, cannot be regarded as a subcontractor.
In People for Use of Davis v. Campfield, 150 Mich. 675, 677, 114 N.W. 659, 660 (1908), the court quoted from Avery v. Board of Supervisors, 71 Mich. 538, 39 N.W. 742 (1888), as follows:
"The subcontractor is an undercontractor  one who takes under the original contract, and is to perform in accordance with the original contract."
The term "subcontractor" means one who has contracted with the original contractor for the performance of all or a part of the work or services which such contractor has himself contracted to perform. Amerman v. State, 111 Okl. 174, 239 P. 146, 149 (1925); Dolese Bros. Co. v. Andrecopulas, 113 Okl. 18, 237 P. 844, 846-847 (1925); Fitzgerald v. Neal, 113 Or. 103, 231 P. 645, 650 (1924); Producers' Lumber Co. v. Butler, 87 Okl. 172, 209 P. 738, 740 (1922).
In Elmer v. United States Fidelity & Guaranty Co., 275 F.2d 89, 90 (5 Cir., 1960), it was held that a "subcontractor" as used in the Miller Act is one who performs and takes from the prime contractor a specific part of the labor or material requirements of the original contract.
*25 Under the facts as disclosed in the record of the case at bar, it is obvious that the material furnished is not of a general type, but is specified material required under the plans and specifications designated in the prime contract. There is no doubt that the material and the use thereof in the construction of the building constituted a material portion of the original contract and had to be furnished and erected in accordance with the plans and specifications of the prime contract.
In Holt & Bugbee Co. v. City of Melrose, 311 Mass. 424, 426, 41 N.E.2d 562, 563, 141 A.L.R. 319, 320 (1942), it was pointed out that:
A subcontractor is "`one who has entered into a contract express or implied, for the performance of an act, with a person who has already contracted for its performance.' Phillips on Mechanics' Liens (3d Ed.), § 44." (Citing cases.) And one who contracts to supply materials manufactured or processed especially for the general contractor and in accordance with special reference to his plans and specifications or those by which he is bound comes within that definition.
In People for Use of Buhl Sons Co. v. Finn, 162 Mich. 481, 127 N.W. 704 (1910), it was held that a party agreeing to do work for a contractor according to the plans and specifications of the original contract is a "subcontractor" within the meaning of the Michigan statute providing that such subcontractor shall give notice of his claim to the board of city officers authorizing the construction work, before he can recover on the contractor's bond required to be given by the statute.
The record clearly shows that Ramsay Steel had to perform its obligation of furnishing materials, fabricating them, and finally erecting them into the school building, in strict accordance with the plans and specifications required of Miles, Inc., the prime contractor, and to the satisfaction and approval of Architect Lindsley.
Appellees rely strongly on Webb v. Blue Lightning Service Co., supra. That case is clearly distinguishable on its facts from the case at bar and affords appellees no authority for their contention.
For the foregoing reasons, we hold that Ramsay Steel was a subcontractor and not a materialman. It follows that the appellant was a materialman to a subcontractor and therefore under the provisions of section 9014, and the other pertinent sections, and under the terms and conditions of the Labor and Material Payment Bond executed by the principal, Miles, Inc., and its surety, Travelers Indemnity Company, the appellant was authorized to bring its demand for the materials and labor it had expended and for which it had not been compensated. It follows that the learned trial court erred in sustaining appellees' motion for a peremptory instruction insofar as Miles, Inc., and Travelers Indemnity Company are concerned. Valid issues of fact were presented by the appellant's proof as to Miles, Inc., and Travelers Indemnity Company, and the same should have been submitted to the jury for determination. No cause of action exists as to the Pascagoula Municipal Separate School District, and the City of Pascagoula, Mississippi. The learned circuit judge was correct in sustaining the peremptory instruction as to these two appellees, and this action is hereby affirmed.
This cause is therefore affirmed as to the Pascagoula Municipal Separate School District and the City of Pascagoula, Mississippi, and reversed and remanded as to Miles, Inc., and Travelers Indemnity Company. Webb v. Blue Lightning Service Co., 237 Miss. 862, 116 So.2d 753 (1960); Western Cas. & Sur. Co. v. Stevens, 218 Miss. 627, 67 So.2d 510 (1953); Arkansas Fuel Oil Co. v. Trinidad Asphalt Mfg. Co., 189 Miss. 366, 198 So. 41 (1940); Stowell v. Clark, 152 Miss. 32, 118 So. 370 (1928); Alabama Marble Co. v. United States Fidelity *26 & Guaranty Co., 146 Miss. 414, 111 So. 573 (1927).
Affirmed in part and reversed in part and remanded.
GILLESPIE, P.J., and PATTERSON, INZER and SMITH, JJ., concur.