RODGERS, Justice:
This is a suit brought by an alleged ma-terialman against a primary contractor and the surety on his performance bond for materials furnished an alleged subcontractor in the construction of two public schools, under the authority of section 9014, Mississippi Code 1942 Annotated (1956). The case was transferred from the Circuit Court to the Chancery Court of Lincoln County, Mississippi, where it was tried and a decree entered in favor of the complainant, O’Neal Steel, Inc.
The appellee, O’Neal Steel, Inc., charged that it furnished steel to Ramsey Steel and Supply Corporation, which had a subcontract with C. E. Frazier and A. W. Morton, doing business under the trade name of Frazier-Morton Construction Company. The appellants contend that the appellee was not a materialman of the contractor, Frazier-Morton Construction Company. The testimony in the case shows that Frazier-Morton Construction Company entered into a construction contract with the Board of Education of Lincoln County. One of these contracts was for the furnishing of all material and work, shown by the specifications to the Bogue Chitto School addition, for the sum of $156,936.40. In the other contract it was agreed that Frazier-Morton would furnish the material and labor and construction to the Eva H. Harris School for the sum of $66,453.60.
Frazier-Morton Construction Company entered into two performance bonds with Fidelity & Deposit Company of Maryland, insuring the faithful performance of each of the contracts with the Board of Education of Lincoln County, Mississippi.
Thereafter, on June 19, 1962, Frazier-Morton Construction Company entered into a contract with Ramsey Steel and Supply Corporation to furnish and supply the steel for the construction of the two school buildings for the sum of $16,500.
Ramsey Steel and Supply Corporation purchased steel from various steel supply companies for the purpose of fabricating steel for these two above described construction jobs as well as other jobs. O’Neal Steel, Inc. furnished a great deal *663 of steel used by Ramsey Steel and Supply Corporation. Some of the orders filled by O’Neal Steel had job numbers written on the orders taken by a salesman on the telephone. These numbers corresponded with job numbers shown on the books of Ramsey Steel & Supply Corporation to be identified with the two jobs being constructed by Frazier-Morton Construction Company for the Board of Education of Lincoln County, Mississippi. The complainant offered evidence to show that steel sold to Ramsey Steel and Supply Corporation (hereafter called Ramsey) was similar to the steel used in the construction of the two school houses located in Lincoln County and was already “cut to dimensions.” On the other hand, the defendants offered proof to show that the great part of the steel used in the two school projects was of such lengths and sizes generally used by the construction trade in building school buildings. It was finally admitted, however, that Ramsey punched holes in some of the steel and bent and welded other parts so that some of the steel required by the plans and specifications of the two school projects could not be used in other buildings. The testimony offered by the complainants is to the effect that Ramsey had very little inventory and that the steel furnished by O’Neal Steel went directly into the school projects. On the other hand, Fred Ramsey of Ramsey testified that O’Neal’s steel, when received by him, went into his inventory and was used to fabricate various projects, and that the steel purchased from O’Neal was not different from other steel purchased from other supply companies.
During the time Ramsey was furnishing steel, according to the plans and specifications, to Frazier-Morton Construction Company, Ramsey was in serious financial difficulties, because of being unable to promptly meet its financial obligations. The complainant, O’Neal Steel, knew about these conditions and its credit agent made arrangements with Mercantile Finance to furnish additional credit to Ramsey at an increased rate of interest. Thereafter, O’Neal Steel furnished Ramsey considerable amounts of steel ($100,000 to $120,000) at a time, after July 1962 when it knew that the contractor was paying Ramsey and that these checks were assigned to Mercantile Finance Corporation for past due accounts. The credit manager of O’Neal Steel testified that although they were worried about Ramsey’s financial condition in September 1962 and knew that he would likely go into bankruptcy as early as January 1963, nevertheless O’Neal .did not notify Frazier-Morton until July 1963 that it had any claim against Frazier-Morton for the steel furnished to Ramsey and contended that it had no duty so to do since it had a right to sue within one year.
The defendants, Frazier-Morton Construction Company and Fidelity & Deposit Company, the surety on the two performance bonds, have appealed to this Court and contend on appeal among other things that the complainant, O’Neal Steel, Inc., failed to show that it was the materialman of a subcontractor.
The issue as to whether or not Ramsey Steel and Supply Corporation was a subcontractor or a materialman for the building contractors, C. E. Frazier and A. W. (Slick) Morton, is of primary importance. Unless Ramsey was a subcontractor, O’Neal Steel, Inc. cannot recover against the contractor for furnishing material to a materialman. Webb v. Blue Lightning Service Company, 237 Miss. 862, 116 So.2d 753 (1960); Annot., 118 A.L.R. 57, 84 (1939).
The appellants rely principally upon Webb v. Blue Lightning Service Company, supra, to substantiate their contention that Ramsey was not a subcontractor of Frazier-Morton Construction Company. The appellee, O’Neal Steel, Inc., contends that the case of O’Neal Steel Company v. Leon C. Miles, Inc., 187 So.2d 19 (Miss.1966), is dispositive of the issue in this case.
In Webb v. Blue Lightning Service Company, supra, Webb, a road contractor, purchased washed gravel from Richton, a gravel company. Blue Lightning Service *664 Company sold Richton diesel fuel and gasoline to enable Richton to excavate the gravel sold to the road contractor, and O. D. King sold Richton other gravel also used in the road contract by Webb. Blue Lightning Service Company sued the contractor, Webb, and his performance bond for the price of the fuel, and King intervened for the price of the gravel. The suit was based upon the theory that Rich-ton was a subcontractor.
This Court held that Richton was not a subcontractor but was a materialman, and that the contractor was not liable to a ma-terialman for material furnished by a ma-terialman.
We quoted 17 C.J.S. Contracts § 11 (1963), at 589, in which it is said:
“ ‘Subcontractor’ has a well defined meaning in building contracts, and as used in its technical sense it means one who takes from the principal contractor a specific part of the work, and does not include laborers or materialmen.”
We also cited cases defining a subcontractor as one to whom the principal contractor sublets a part or all of the contract itself.
In the case of O’Neal Steel Company v. Leon C. Miles, Inc., supra, relied upon by the appellee, the record shows that Leon C. Miles, Inc. contracted to construct a school house, that he gave the usual public performance bond, and thereafter the contractor entered into another contract with Ramsey Steel and Supply Corporation to furnish the structural steel to be used in the school building. In addition to this contract, another contract was entered into in which it was agreed that the Ramsey Steel and Supply Corporation would “erect all Structural Steel in accordance with Plans and Specifications and acceptable to the Architect and Owner for the lump sum of * *
In the O’Neal Steel case we cited several cases in which the term “subcontractor” was defined. One of these cases was Indiana Limestone Company v. Cuthbert, 126 Kan. 262, 267 P. 983 (1928). In that case it was said:
“Under the authorities, one who takes no part in the construction of a building, but merely furnishes material for use in a building, is not a subcontractor, and if the client is employed to furnish material only, whether fabricated or made ready for use or not, cannot be regarded as a subcontractor.” 126 Kan. at 266, 267 P. at 984.
The rule, holding one to be a subcontractor who supplies material processed especially for the general contractor in accordance with special reference to his plans and specifications, may be found in the case of Holt & Bugbee Company v. City of Melrose, 311 Mass. 424, 41 N.E.2d 562, 141 A.L.R. 319 (1942).
The author of the annotation set out under Holt & Bugbee in 141 A.L.R. 319 (1942) points out that no general rule can be laid down to determine whether or not one is a subcontractor or materialman, but general principles have been worked out to aid in doing so. It is said:
“Thus a materialman may be distinguished from a contractor or subcontractor by the fact that he agrees only to furnish the materials and not to install them or do any work in connection therewith in the building under construction.” 141 A.L.R. at 323.
It was also said:
“Generally, one who merely furnishes materials to the owner or a contractor is a materialman, and not a contractor or subcontractor, within the meaning of mechanic’s lien laws.” 141 A.L.R.' at 324.
The author cited many cases, and again said :
“Generally, one who not only furnishes materials, but installs them, is a contractor or a subcontractor, and not a materi-alman, within the meaning of mechanic’s lien laws.” 141 A.L.R. at 330.
*665 In O’Neal Steel Company v. Leon C. Miles, Inc., supra, we held that Ramsey Steel and Supply Corporation was the subcontractor because the corporation not only furnished the steel used in the public building involved, but also built the steel into the building; that is to say, Ramsey Steel and Supply Corporation did a part of the construction work on the building.
In the case now before the Court, Ramsey Steel and Supply Corporation did no more than retail steel supplies to the general contractor, and the fact that the retailer cut off certain of the steel to lengths required by the building specifications and joined other parts so as to prefabricate and rearrange the steel material into sizes, lengths and forms required by the builder did not constitute the retailer as a subcontractor.
In order to constitute a subcontractor under section 9014, Mississippi Code 1942 Annotated (1956), it is necessary that there be a contract to construct a part or all of the building contract undertaken by the contractor, and the mere fabrication of material furnished to the general contractor is not enough to constitute a material-man to be a subcontractor. See Annot., 141 A.L.R. 321 (1942).
We are of the opinion, therefore, that the decree entered by the Chancery Court of Lincoln County, Mississippi in favor of O’Neal Steel, Inc. against C. E. Frazier, A. W. “Slick” Morton, and Fidelity & Deposit Company of Maryland for the value of the steel furnished by O’Neal Steel, Inc. to Ramsey Steel and Supply Corporation, based upon the claim that Ramsey was a subcontractor and not a materialman, is not authorized under the terms of section 9014, Mississippi Code 1942 Annotated (1956), and is not authorized under the law and facts in this case.
The decree of the Chancery Court is manifestly incorrect, and is hereby reversed, and a judgment will be entered in this Court dismissing this cause of action at the cost of the appellee.
Reversed and rendered.
ETHRIDGE, C. J., GILLESPIE, P. J., and SMITH and ROBERTSON, JJ., concur.