The **JORDAN COMPANY**, Plaintiff,

v.

**BETHLEHEM STEEL CORPORATION,** and **Barry J. Rovins**, as Trustee of the Estate of **Southern Steel Construction Company, Inc., Bankrupt**, Defendants.

**Civ. A. No. 2500.**

United States District Court,
S. D. Georgia,
Savannah Division.

Jan. 29, 1970.

Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, by Malcolm Maclean, Arnold C. Young, Savannah, Ga., for Bethlehem Steel Corp.

Brannen, Clark & Hester by Fred S. Clark, Savannah, Ga., for Barry J. Rovins, Trustee; Joe Schreiber, Waycross, Ga., of counsel.

## ORDER

LAWRENCE, Chief Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Jordan Company which is a general contractor brought this interpleader action in connection with a construction job at the Savannah plant of Hunt-Wesson Foods, Inc. It interpleaded as claimants to the disputed fund ($22,627.-24) Bethlehem Steel Corporation and the subcontractor-materialman, Southern Steel, Inc.[1] The interpleader phase of the litigation was tried before me without a jury.

The evidence reveals that on February 9, 1968, Jordan Company entered into a contract with Hunt-Wesson for the modernization of the latter's plant. On March 6th Jordan sent a purchase order to Southern Steel for the joists, structural steel and miscellaneous metals required in stated sections of the Specifications. Southern Steel, in turn, ordered from Bethlehem part of its steel requirements for the Savannah job. In all, Bethlehem supplied 156 tons of a total of 250–300 tons of steel that went into the job. Two hundred and forty-two separate pieces were included in the order. Shipments were made to Southern Steel on May 21st and May 27, 1968.

The mill steel sold by Bethlehem was to be fabricated by Southern Steel at its Jacksonville plant. The steel was to be punched with holes and otherwise fabricated. Most of the milled steel was cut by Bethlehem to precise dimensions. On the same date that Jordan delivered the purchase order to Southern Steel a "Subcontract Agreement" was entered into between these two concerns where-

Bouhan, Williams & Levy by Walter C. Hartridge, III and Charles H. Wessels, Savannah, Ga., for The Jordan Co.

---

1. More accurately, Barry J. Rovins, as Trustee of the Estate of Southern Steel, Inc., bankrupt.

by the latter agreed to erect all of the steel required under certain sections of the specifications.

In June, 1968, Jordan learned of the serious financial difficulties of Southern Steel and on June 19th advised Bethlehem of that fact. In the ensuing weeks Jordan had to help the subcontractor meet its payrolls.

The 90-day limit for Bethlehem's filing of a materialman's lien would expire around the 25th of August. That deadline was much on the mind of its credit officials. Lien papers were executed on August 20th and sent to Savannah counsel to be filed upon instruction. On August 19th Robert E. Albee, District Credit Manager, called the President of Southern Steel. The latter informed him that Jordan was holding up its check because of the threat of lien. According to contemporaneous memoranda of telephone communications, Mr. Albee talked to the Vice-President of Jordan on August 20th. That company did not want a lien filed by Bethlehem. It agreed to the device of a check being issued by it payable jointly to Bethlehem and Southern Steel, the proceeds of which would go to Bethlehem. There was talk about postponement by Bethlehem of filing a lien in consideration of a payment by Southern Steel of $10,000 on account. Albee declined that proposition. The following day Mr. Crabtree, the Vice-President of Jordan, called Bethlehem and asked that the latter forego lien rights in consideration of payment of $15,000 in cash and the balance on September 16, 1968. Albee informed him that lien rights would not be surrendered without either full payment or Jordan's guaranty of the balance. At this time Jordan consulted its attorney who raised the question of whether any lien rights were possessed by Bethlehem. Jordan's counsel called Mr. Albee on August 22nd and again proposed payment of $15,000. The latter again refused the proposition in the absence of a guaranty of the balance by Jordan. It was finally agreed that a joint check for the whole amount payable to Bethlehem and Southern Steel would be sent by Jordan to Southern Steel for endorsement and delivery to Bethlehem. Albee testified that the President of Southern Steel agreed to the arrangement over the telephone. The latter denies any such agreement by him. Mr. Crabtree, who also talked to the President of Southern Steel, testified that his understanding with Mr. Young was that he would accept a joint check. According to Crabtree, when Jordan forwarded the check to Southern Steel it expected that company to sign the check as it had indicated would be done.

On August 22nd the joint check was forwarded to Southern Steel by Jordan with an accompanying letter, stating, "As per our understanding, please endorse this check and forward to Bethlehem Steel Corporation. It is our understanding from the Jacksonville Office that someone will contact you and pick this check up." On the same day Mr. Albee wrote a letter to Jordan (with a copy to Southern Steel) in which he stated, "In consideration for the general contractors joint check or checks to Southern and Bethlehem for this amount, Bethlehem will forego their legal rights against the job real estate under Georgia law."

Southern Steel received the check but on advice of counsel failed to endorse the check and deliver it to Bethlehem. I find under the evidence that Southern Steel had agreed to the joint check arrangement and that it breached its undertaking as to endorsement.

On August 30, 1968, Southern Steel filed a Chapter X proceeding under the Bankruptcy Act.[2] On December 27, 1968, its Trustee filed a lien on the property of Hunt-Wesson under Georgia Code § 67–2002(2) to protect the amount of $46,709.50 Jordan had not paid to Southern Steel. In June, 1969, long after the expiration of the time for

2. Subsequently converted into an involuntary proceeding in which petitioner was adjudged a bankrupt.

filing a statutory lien, Bethlehem filed a materialman's lien on the owner's property in the amount of $22,627.24.

This is an appropriate moment to summarize the legal and factual contentions of the parties.

Southern Steel and Jordan assert that Bethlehem, having failed to file its lien within the required period, possesses neither a statutory nor equitable lien; that Bethlehem has no priority to the deposited fund, and is only an unsecured creditor of the bankrupt. The Trustee and Jordan further insist that Bethlehem was only a supplier and as such could possess no lien under Georgia law. The Trustee maintains that since Southern Steel filed a petition in bankruptcy a few days after the joint check was received, a preference to a creditor forbidden by the Bankruptcy Act would have resulted had it endorsed same.[3] The Trustee also asserts that there is no showing that all of the Bethlehem steel went into the Savannah job; that it may have been used by Southern Steel on other projects.[4]

For its part, Bethlehem argues that the facts show a novation between the three parties under which, by agreement of all, Jordan was substituted as Bethlehem's debtor in lieu of Southern Steel. It contends that it has an equitable lien and is entitled to the fund paid into court by Jordan.

I think the facts here would support a finding that there was a novation in re-spect to the Bethlehem-Southern Steel purchase order. Instead of Southern Steel being Bethlehem's debtor it was agreed by the parties, including Jordan, that the latter would become the debtor of Bethlehem. Certainly there was a new agreement in respect to payment and a new and different consideration, the waiver of lien. However, the matter is not free from all doubt. Lee H. Henkel, Jr. who is attorney for Jordan testified that he told Albee that the matter of payment was between Southern Steel and Bethlehem and that his client did not undertake to guarantee the account or to get the check endorsed by Southern Steel. The Vice-President of Jordan testified that he did not guarantee payment to Bethlehem.

The evidence is quite clear that Bethlehem abstained from filing its lien only on the strength of Southern Steel's statement that it would go along with the joint check arrangement. It is not true that Georgia law gives no lien to a supplier of materials to another supplier.[5] If that is what General Supply Company v. Hunn, 126 Ga. 615, 55 S.E. 957 stands for, the law is now different. The statute provides that "all * * * persons furnishing material for the improvement of real estate" shall have a special lien thereon. Ga. Code § 67–2001(1); Georgia Laws 1956, Vol. One, p. 565.

Jordan and the Trustee argue, as I stated earlier, that failure to pursue

---

3. See Finger Furniture Co. v. Brock, 5 Cir., 410 F.2d 568. But cases more in point indicate that under these circumstances no money would have come into the estate of the bankrupt. Keenan Pipe Company v. Shields, 9 Cir., 241 F.2d 486; Jackson v. Flohr, 9 Cir., 227 F.2d 607.

4. I reject this theory factually. Jordan concedes that the milled steel was fabricated for and was used in the Hunt-Wesson job. It would seem unusual that a steel fabricator would order milled steel for general stock, particularly one in the precarious financial situation in which Southern Steel found itself. Many of the joists and beams were 40 to 60 feet in length, cut to fractional inch

dimensions. An engineering expert who was a witness for Bethlehem testified, after inspection of the Hunt-Wesson plant, that he found numerous items which corresponded exactly with the types and sizes of steel called for by the Specifications.

5. In the instant case it is contended that Southern Steel, though a single entity, played a dual role, to wit: (1) as a supplier of materials to the general contractor and (2) as subcontractor of the latter in erecting the fabricated steel it sold to Jordan. It would appear that in such cases the two roles merge. See 36 Am.Jur.Mechanics Liens, § 52; Holt & Bugbee Co. v. City of Melrose, 311 Mass. 424, 41 N.E.2d 562, 141 A.L.R. 319.

timely a statutory lien remedy, except under certain circumstances not present here, deprives one of the right to an equitable lien. G.E.C. Corporation et al. v. Levy, 119 Ga.App. 59, 166 S.E.2d 376; King v. Rutledge, 208 Ga. 172, 175, 65 S.E.2d 801. The appellate courts of this State do not appear to have been confronted with the same facts we have in the present case. My *obiter* view is that Bethlehem possesses an equitable lien to the fund as against parties whose agreement caused it to forego filing the statutory lien. I say *obiter* because, as I see the case, it is not necessary to reach that issue.

■ If Bethlehem has no equitable lien on the fund, certainly Southern Steel possesses no statutory lien recognizable by this Court in respect to $22,-627.24 of its total lien claim. Southern Steel agreed that that amount would be paid to Bethlehem by the General Contractor instead of to it.

The facts in this case are less comfortable in the gloves of the law than in the greatcoat of equity. We have a fund to which there are two conflicting claims. The rights of the parties can be no stronger than their rights to the joint check. I have found that Bethlehem forewent its lien because of the agreement of all concerned as to the issuance of the check by Jordan and its endorsement by Southern Steel. The latter agreed to go along with the arrangement and its failure to do so deprived Bethlehem of its statutory rights. The latter was not negligent, it was just over-trustful.

■ "Equity considers that done which ought to be done, and directs its relief accordingly." "If equities are unequal, the superior equity shall prevail." The equity of a party who has been misled is superior to that of him who has misled him. Ga.Code §§ 37–106, 37–107, 37–109. The equitable rights of Bethlehem are too compelling to be defeated by law of doubtful applicability. The fund in the Registry belongs to Bethlehem. A form of judgment will be submitted by its counsel in accordance with this Order.

I think that the findings of fact in this order are sufficient but if any party desires additional or more explicit fact-findings, I will consider same on submission by counsel.

Other issues remain in the litigation and will be determined hereafter.