RODGERS, Justice:
This case revolves around two contracts let by the Jackson Municipal Airport Authority, one in favor of the T. L. James & Company, Inc. and the other in favor of Frank L. Dennis, d/b/a Dennis Brothers Construction Company. The facts leading up to the litigation in question are as follows.
On April 11, 1963, the Jackson Municipal Airport Authority entered into a contract with the T. L. James & Company, Inc. for certain construction work designated as Contract No. 11. The base bid of the James contract was $1,524,328.39. Appellant, National Surety Corporation, became surety on the contract bond. Among the provisions in this bond was one covering “all persons furnishing labor, materials, equipment or supplies therefor.” Also in the bond was a provision for the payment of expenses and attorneys’ fees that might be incurred in the enforcement of the obligations of the bond. Thereafter, James entered into a subcontract with Clark Brothers Incorporated, for a portion of the construction to be done on Contract No. 11. The work involved in James’ subcontract with Clark consisted of the paving of certain runways and taxiways at the airport.
Approximately one year from the date of the contract between the Airport Authority and James, the Airport Authority entered into another contract for certain construction work, designated as Contract No. 16, with Dennis Brothers Construction Company. The base bid of the Dennis contract with the Airport Authority was $1,-381,073.32. Thereafter, Dennis entered into a subcontract for a portion of the work on Contract 16 with Clark Brothers Company. The work involved in this subcontract included the paving of certain runways and taxiways at the airport.
Thus the Clark Corporation subcontracted with James, and the Clark partnership subcontracted with Dennis. Mr. James Clark, who entered both subcontracts in behalf of the Clark Enterprises, testified that while he operated these businesses as two different organizations with different addresses, they were more or less the same, the same partners being stockholders in the corporation. Moreover, the same labor and equipment were used in performing the work under the James and Dennis contracts.
Clark was to secure a bond for the amount of the subcontract with Dennis. However, Clark’s business was in financial difficulty at the time, and he advised Dennis of his inability to secure said bond. Whereupon, Dennis agreed to pay for materials used by Clark in the subcontract out of funds due Clark by Dennis. Money used by Dennis to pay for these materials was to be charged to Clark against “estimates” subsequently submitted by Clark to Dennis for work completed on Clark’s portion of Contract No. 16.
In pursuance of Dennis’ agreement to pay for materials used by Clark, Dennis contacted Mr. Ruel Traxler, an agent of Jackson Ready-Mix Concrete. Since Clark planned to purchase all his concrete sand and concrete gravel from Ready-Mix, Dennis asked Traxler to send to Dennis a copy of all load tickets, invoices and statements for materials bought by Clark. Dennis testified that he told Traxler that he wanted to be billed only for materials delivered to his project, and that Traxler assured Dennis that the invoices he would receive would be for materials used only in the Dennis project.
On or about June 25, 1964, Ready-Mix began delivering and stockpiling sand and gravel at the airport for Clark, and the materials were charged to the Clark partnership account. This material was placed in a common stockpile from which both the Dennis and James subcontracts were paved. The aggregate from these common stockpiles was poured into a central concrete mixing plant on the job site, and then hauled to the point of the paving in agitator trucks. In order to account for the amount of sand and gravel hauled to the airport site by Ready-Mix, the following system *122 was used: An employee for Clark checked each load brought to the job site; he then signed the load ticket, giving it to the driver and retaining a copy for Clark. Subsequently, the driver returned the signed load ticket to the Ready-Mix office for invoicing and billing.
The percentage of sand and gravel taken from the common stockpile and used in the Dennis contract was 75.19%. The percentage used in the James contract was 24.81%. Thus the total dollar quantity of sand and gravel used in the James contract was $81,-595.53, and the total of sand and gravel used in the Dennis contract was $247,286.-11. The only material delivered to the airport and not used in either the Dennis or James contracts was that amount lost due to a little waste.
Clark began paving on the James subcontract on August 27, 1964, and he completed paving on the James subcontract on October 1, 1964. Clark began paving the Dennis subcontract on September 25, 1964, and completed this work on November 25, 1964. During a five day period (September 25, 1964 — October 1, 1964), Clark worked on both the James and Dennis subcontracts. During this period of time, Clark paved on the Dennis job one day and on the James job the next. There was no difference in the manner in which Clark’s work was performed on each of the paving subcontracts. The contract specifications on the James and Dennis contracts were the same; nor were there any substantial differences in the conditions under which the Dennis and James contracts were performed.
Ready-Mix mailed Dennis copies of all invoices and statements for materials purchased by Clark. No distinction was made in materials purchased by Clark and used in the Dennis contract and those materials purchased by Clark and used in the James contract. Clark had only one account with Ready-Mix; thus Dennis was given Clark’s invoices for materials used both in his project and in the James project.
Periodically, Dennis paid Ready-Mix for the sand and gravel charged to Clark; he paid $46,771.55 on September 1, 1964, $132,-493.49 on October 16, 1964, $105,789.33 on November 30, 1964, and $10,939.10 on January 14, 1965. Thus, by January 14, 1965, Dennis had paid approximately $295,792 on Clark’s account with Ready-Mix although only $247,286 worth of sand and gravel was used in the Dennis project. About February 26, 1965, Dennis called Mr. Brock Day, general manager for Ready-Mix, and told Mr. Day that he had overpaid. Dennis requested a refund from Ready-Mix; whereupon Ready-Mix filed suit against James’ surety for the unpaid Clark account for the materials used on the James contract, Project No. 11. Ready-Mix assigned that portion of its claim to Dennis which Dennis allegedly overpaid for materials used by Clark in Project No. 11. In the suit against James’ surety for $81,542.24, claimed to be due on the Clark account, Ready-Mix sued for $32,838.17 as that portion of the account never paid by Clark or anyone else. Dennis, armed with his assignment from Ready-Mix, intervened for the balance of $48,704.07.
James paid Clark for all the work Clark performed in his subcontract with James. The testimony is conflicting as to whether or not James asked Ready-Mix if Clark’s account had been paid before James settled with Clark.
Mr. J. B. Reed, supervisor of the Mississippi operations for James, testified that he telephoned Mr. Brock Day, who works for Ready-Mix, to check the status of Clark’s account before making a substantial payment to Clark on September 17, 1964, and that he did so again before making another substantial payment to Clark on October 15, 1964. Reed testified that on both occasions Day advised Reed that the Clark bill was paid up to date. Mr. Day testified that although Reed called him inquiring into the status of the Clark account, Day told Reed that Clark owed Ready-Mix a large sum of money.
*123 There was a jury verdict and judgment in favor of Jackson Ready-Mix Concrete against National Surety Corporation in the principal sum of $32,838.17, plus legal interest to the date of the judgment in the amount of $5,527.69, plus an attorneys’ fee fixed by the jury of $9,591.47, or a total of $47,957.33, plus interest from the date of the judgment and court costs. The jury awarded Dennis Brothers “none,” but on motion of Dennis Brothers the lower court set aside that portion of the jury verdict and awarded to Dennis $48,704.07, plus interest, plus attorneys’ fees in the amount of 25% of the total award, or $71,229.68.
National Surety Corporation has appealed both awards to this Court.
I.
The Ready-Mix Claim
It is undisputed that Ready-Mix was never paid the balance of $32,838.17 on the Clark account. The bond under which this case arose and in which National Surety Corporation is surety for the principal, James, is clearly intended for the benefit of materialmen and subcontractors just as it is intended for the benefit of the Airport Authority with whom James contracted.
The jury heard conflicting testimony as to whether or not James was advised of the outstanding balance on Clark’s account. In returning a verdict for Ready-Mix, the jury evidently believed that James was advised of the outstanding balance, or that James paid Clark without attempting to ascertain whether or not the material-men had been paid.
Appellant contends that Ready-Mix sold the materials to the Clark partnership (with whom Dennis subcontracted), which in turn supplied some of the materials to the Clark Corporation (with whom James subcontracted). Thus, it is said by appellant that the James Company was the contractor, the Clark Corporation was the subcontractor, the Clark partnership was the materialman, and “Ready-Mix was a materialman of a materialman.” Appellant cites Webb v. Blue Lightning Service Company, 237 Miss. 862, 116 So.2d 753 (1960), and argues that the contractor and his surety are not liable to a “materialman of a materialman.” That contention is rejected since the record reveals that although the two Clark enterprises were different in name, they were actually “one and the same operation.” The record reveals that the same labor and equipment were used in performing the work under the James and Dennis subcontracts. Moreover, the appellants issued checks in payment to “Clark Brothers.” The case at bar, therefore, is distinguishable from Webb v. Blue Lightning Service Company, supra.
The contention of the appellant that Ready-Mix had no standing to sue .the ap-pellee bcause the account of Clark had been paid, is without merit. This contention is based upon the theory that Project No. 11 was finished on or about October 1, 1964, and it is claimed that Ready-Mix had received payment for all of the sand and gravel delivered to the airport on or before that date, or that Ready-Mix had received payment for all of the sand and gravel that could have been incorporated into Project No. 11. This thesis is based upon the proposition that the money paid to Ready-Mix amounted to more than the amount of material furnished by Ready-Mix before October 1, 1964. It is argued that after the James project (No. 11) had been finished, Ready-Mix continued to deliver to the “common pile” of materials sand and gravel to be used in the Dennis Project No. 16, and that, in fact, Dennis paid $110,-337 to Ready-Mix after October 1, 1964. Thus it is claimed that the amount due Ready-Mix on Project No. 11 had been paid.
It is pointed out by appellant that Mississippi Code 1942 Annotated section 9014 (1956) only permits suit against the contractor’s bond for the materials used in the project for which payment had not been made.
*124 The relevant part of this section is as follows: “ * * * and any person who has furnished labor or materials used therein and wherefor payment has not been made shall have the right * *
Appellant cited the case of Marquette Cement Manufacturing Company v. Fidelity & Deposit Company, 173 Miss. 164, 158 So. 924 (1935) as authority in support of his argument.
 We do not believe this case aids the appellant’s contention that Ready-Mix had been paid, because although the proof is conflicting, the jury had a right to believe that there was still due on the Clark account to Ready-Mix the sum of $178,-117.95 on the date when Project No. 11 was finished. On that date (October 1, 1964), and on the date of the settlement with the Airport Authority of the City of Jackson, Ready-Mix had a right to rely upon the bond of James for the materials furnished to Clark used in the construction of Project No. 11. Moreover, the fact that Clark later purchased other materials used in Project No. 16 under an agreement between Dennis and Ready-Mix in which it was agreed that Dennis would pay for the materials used in Project No. 16, this agreement did not relieve the bond of James for the materials used in Project No. 11, the cost of which was due and unpaid at the time the construction on the James project was concluded.
The case of Marquette Cement Company v. Fidelity & Deposit Company, supra, cited by the appellant, brings into focus the contention of the appellant that the suit of the appellant was an attempt to combine the liabilities of two public works bonds in an effort to collect for the materials sold to Clark used in both projects under both contractors’ bonds. In the Marquette case, where the contractor had eleven contracts and there were different bonds, this Court said that it was necessary for the plaintiff to show what materials the contractor used in performing each contract in a separate suit.
In the instant case, the appellees offered testimony to show how much material was used in the performance of each contract by showing that there were 20,377 cubic yards of concrete in Project No. 11 and 61,749 cubic yards of concrete in Project No. 16; that 24.81% of the total was used in Project No. 11; that 75.19% of the total material was used in Project No. 16. The testimony showed that the money paid by Dennis to Ready-Mix more than paid for the material used in the Dennis contract under the agreement between Dennis and Ready-Mix, but the amount paid to Ready-Mix lacked $32,838.17 paying for the amount due to Ready-Mix for material used in both contracts.
T. L. James & Company did not pay for any of the material used by Clark purchased from Ready-Mix, nor did Clark use any of the money paid to him by James to pay on the account due to Ready-Mix for the materials used in the James Contract Project No. 11.
The jury had the issues fairly presented to it, and we are of the opinion that the jury verdict settled the question as to what amount, if any, was due by the contract bond of T. L. James & Company. We are, therefore, of the opinion that the jury verdict in the sum of $32,838.17, plus legal interest of $5,527.69 and attorneys’ fees of $9,591.47 in favor of Jackson Ready-Mix Concrete against the National Surety Company should be affirmed.
II.
Attorneys’ Fees
The motion of the appellee asking this Court to increase the attorneys’ fees allowed by the jury in the Circuit Court for additional work in this Court has been carefully considered, and we are of the opinion that the testimony introduced in the trial court from which the jury determined the amount of the attorneys’ fees, was based upon a consideration of a contingent fee for the collection of the money due on the *125 account; and that an additional fee should not be allowed for additional work on appeal in this Court. The instant case is to be distinguished from the cases cited by the appellee in which the attorneys’ fees had been “incurred,” paid or agreed upon, or divorce cases where the court is required by law to fix the amount of attorneys’ fees to be paid by the husband for the services of an attorney in the trial court and also in the Supreme Court. Moreover, we think the stated fee is ample.